Brian O'Neill (State Bar No. 38650)
Frederick D. Friedman (State Bar No. 73620)
boneill@jonesday.com
ffriedman@jonesday.com
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA  90071-2300
Telephone:  (213) 489-3939
Facsimile:   (213) 243-2539

George J. Terwilliger III (admitted *pro hac vice*)
gterwilliger@whitecase.com
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone:  (202) 626-3628
Facsimile:   (202) 639-9355

Attorneys for Defendant
Pierce O'Donnell

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PIERCE O'DONNELL,<br><br>    Defendant. | No.: 2:08-CR-872 (SJO)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS THE INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  April 6, 2009<br>Time:  10:00 a.m.<br>Place: Courtroom 880<br><br>Estimated Time to Present Motion: 30 minutes |

1    PLEASE TAKE NOTICE that on Monday, April 6, 2009, at 10:00 a.m., or as

2    soon thereafter as counsel may be heard, in the Courtroom of the Honorable S.

3    James Otero, defendant Pierce O'Donnell, by and through counsel, will move this

4    Court to dismiss the Indictment for the reasons set forth in Mr. O'Donnell's

5    Memorandum of Points of Authorities in Support of this Motion to Dismiss the

6    Indictment.  Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), the

7    Indictment fails to allege that Mr. O'Donnell committed crimes under 2 U.S.C.

8    § 441f and 18 U.S.C. §§ 371, 1001.  Pursuant to Rule 12(b)(2), the conduct alleged

9    in Count Three is insufficient, as a matter of law, to prove the crime charged, and

10   the Indictment violates Mr. O'Donnell's First Amendment rights.

11        This motion is based on the Court's file in this matter, on the attached

12   Memorandum of Points and Authorities, and on matters that may come to the

13   Court's attention prior to or at the time of hearing this motion.

14   Dated:        March 16, 2009              Respectfully Submitted,

15                                            WHITE & CASE LLP

16

17                                            George J. Terwilliger III

18                                            JONES DAY
                                             Brian O'Neill
19                                            Frederick D. Friedman

20

21                                            Attorneys for Defendant
                                             PIERCE O'DONNELL

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

INTRODUCTION ................................................................................................. 1

ARGUMENT ........................................................................................................ 3

I.     THE INDICTMENT MUST BE DISMISSED BECAUSE IT FAILS
       TO ALLEGE THAT MR. O'DONNELL COMMITTED CRIMES
       UNDER SECTIONS 441F, 371, AND 1001 ............................................. 3

       A.     An Indictment That Fails to Allege a Crime Must Be Dismissed ........ 3

       B.     Count Two Does Not Allege a Crime Under Section 441f ................. 3

              1.     The Indictment Alleges That Mr. O'Donnell
                     "Reimbursed" Others Making "Contributions" in Their
                     True Names ........................................................................ 3

              2.     The Express Language of Section 441f Is Unambiguous
                     and Does Not Cover Reimbursements ...................................... 4

                     a.     The Statutory Text Does Not Proscribe
                            Reimbursements ....................................................... 5

                     b.     The Statute Does Not Proscribe Indirect
                            Contributions ............................................................ 6

       C.     Count One Does Not State a Conspiracy to Violate Section 441f,
              in Violation of 18 U.S.C. § 371, Because the Conduct Allegedly
              Agreed To Does Not Violate Section 441f .................................... 7

       D.     Count Three Must Be Dismissed Because the Indictment Fails to
              Allege a Violation of 18 U.S.C. § 1001 and the Conduct Alleged
              in Count Three is Insufficient, as a Matter of Law, to Prove the
              Crime Charged ............................................................................. 8

              1.     The Indictment Fails to Allege Essential Elements of a
                     Section 1001 Violation ......................................................... 8

              2.     The Treasurer's Statement Was Indisputably True ................ 11

II.    EVEN IF THE TERMS OF SECTION 441F WERE AMBIGUOUS,
       FUNDAMENTAL PRINCIPLES OF STATUTORY
       CONSTRUCTION REINFORCE THE CONCLUSION THAT THE
       INDICTMENT MUST BE DISMISSED ..................................................... 14

       A.     Construing Provisions of the FECA in Light of Each Other and
              Giving Effect to All FECA Provisions Confirm That Section
              441f Does Not Prohibit Reimbursements ..................................... 14

       B.     Additional Principles of Statutory Interpretation Reinforce the
              Conclusion that the Indictment Must Be Dismissed ...................... 18

              1.     The Rule of Lenity and the First Amendment Require
                     That Ambiguity in the Statute Be Resolved in Mr.
                     O'Donnell's Favor ............................................................. 18

              2.     Section 441f Fails to Give Fair Notice That It Prohibits
                     Reimbursements ................................................................ 20

**TABLE OF CONTENTS**
**(continued)**

Page

3.    Because Congress Has Not Expressly Prohibited Reimbursements in § 441f, Applying the Statute to Prohibit Mr. O'Donnell's Alleged Reimbursements Would Violate the First Amendment.........................................21

CONCLUSION..........................................................................................................25

NOTICE OF MOTION AND MOTION TO
DISMISS THE INDICTMENT; MEMORANDUM
OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**CASES**

<span style="text-align:center">SUPREME COURT OF THE UNITED STATES</span>

Page

*Barnhart v. Sigmon Coal Co., Inc.,*
534 U.S. 438 (2002) ...........................................................5, 7, 15

*Boos v. Barry,*
485 U.S. 312 (1988) ...................................................................24

*Broadrick v. Oklahoma,*
413 U.S. 601 (1973) ...................................................................22

*Buckley v. Valeo,*
424 U.S. 1 (1976) ....................................................4, 14, 19, 22

*Caminetti v. United States,*
242 U.S. 470 (1917) .....................................................................5

*Grayned v. City of Rockford,*
408 U.S. 104 (1972) ...................................................................20

*Ingram v. United States,*
360 U.S. 672 (1959) .....................................................................8

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,*
523 U.S. 26 (1998) .....................................................................14

*Neder v. United States,*
527 U.S. 1 (1999) .........................................................................9

*Parr v. United States,*
363 U.S. 370 (1960) .....................................................................7

*Perrin v. United States,*
444 U.S. 37 (1979) .......................................................................5

*Randall v. Sorrell,*
548 U.S. 230 (2006) ...................................................................22

*Ratzlaf v. United States,*
510 U.S. 135 (1994) ...................................................................10

*TRW Inc. v. Andrews,*
534 U.S. 19 (2001) .....................................................................16

*United States v. Bass,*
404 U.S. 336 (1971) ...................................................................19

*United States v. CIO,*
335 U.S. 106 (1948) ...................................................................24

**TABLE OF AUTHORITIES**
(continued)

Page

*United States v. Hudson,*
 11 U.S. (7 Cranch) 32 (1812)............................................................23

*United States v. Kokinda,*
 497 U.S. 720 (1990) ...................................................................19

*United States v. Laub,*
 385 U.S. 475 (1967) .........................................................................3

*United States v. Menasche,*
 348 U.S. 528 (1955) ...................................................................16

*United States v. Sampson,*
 371 U.S. 75 (1962) .........................................................................3

*United States v. Santos,*
 128 S. Ct. 2020 (2008) ...........................................................1, 19

*United States v. Wiltberger,*
 18 U.S. (5 Wheat) 76 (1820)......................................................19

*Village of Schaumburg v. Citizens for a Better Env't,*
 444 U.S. 620 (1980)....................................................................22

<u>UNITED STATES COURTS OF APPEAL</u>

*Buckley v. Valeo,*
 519 F.2d 821 (D.C. Cir. 1975) ..................................................14

*Gallarde v. INS,*
 486 F.3d 1136 (9th Cir. 2007)...................................................16

*General Electric Co. v. Envtl. Prot. Agency,*
 53 F.3d 1324 (D.C. Cir. 1995) .............................................20, 21

*Goland v. United States,*
 903 F.2d 1247 (9th Cir. 1990)..............................................4, 5, 24

*Hanlester Network v. Shalala,*
 51 F.3d 1390 (9th Cir. 1995)....................................................10

*United States v. Awad,*
 551 F.3d 930 (9th Cir. 2009)..................................................9, 10

*United States v. Camper,*
 384 F.3d 1073 (9th Cir. 2004)...................................................11

*United States v. Critzer,*
 498 F.2d 1160 (4th Cir. 1974).....................................................21

**TABLE OF AUTHORITIES**
(continued)

Page

*United States v. Curran,*
  20 F.3d 560 (3d Cir. 1994)............................................................9, 10, 14

*United States v. Dahlstrom,*
  713 F.2d 1423 (9th Cir. 1983).................................................................21

*United States v. Du Bo,*
  186 F.3d 1177 (9th Cir. 1999)...............................................................3, 9

*United States v. Goland,*
  897 F.2d 405 (9th Cir. 1990)......................................................................4

*United States v. Goland,*
  959 F.2d 1449 (9th Cir. 1992)....................................................................5

*United States v. Henderson,*
  243 F.3d 1168 (9th Cir. 2001)..................................................................10

*United States v. Hsia,*
  176 F.3d 517 (D.C. Cir. 1999) .....................................................10, 13, 24

*United States v. Kanchanalak,*
  192 F.3d 1037 (D.C. Cir. 1999) ..........................................................13, 15

*United States v. Levin,*
  973 F.2d 463 (6th Cir. 1992).............................................................11, 12

*United States v. Lopez,*
  2 F.3d 1342 (5th Cir. 1993).....................................................................23

*United States v. Mayberry,*
  913 F.3d 719 (9th Cir. 1990)....................................................................11

*United States v. Mayer,*
  503 F.3d 740 (9th Cir. 2007)....................................................................24

*United States v. Omer,*
  395 F.3d 1087 (9th Cir. 2005).....................................................................8

*United States v. Phillips,*
  367 F.3d 846 (9th Cir. 2004)....................................................................12

*United States v. Whiteside,*
  285 F.3d 1345 (11th Cir. 2002).........................................................20, 21

## STATUTES

2 U.S.C. § 31-2 (2006).................................................................................6

2 U.S.C. § 431(4) (Supp. II 2000) ...........................................................15

NOTICE OF MOTION AND MOTION TO
DISMISS THE INDICTMENT; MEMORANDUM
OF POINTS AND AUTHORITIES

**TABLE OF AUTHORITIES**
(continued)

Page

2 U.S.C. § 431(8)(A) (Supp. II 2000)...............................................................6

2 U.S.C. § 431(8)(A)(i) (Supp. II 2000) ...................................................2, 12, 16

2 U.S.C. § 432 (Supp. II 2000) ...............................................................15

2 U.S.C. § 433 (Supp. II 2000) ...............................................................15

2 U.S.C. § 434(a)(1) (Supp. II 2000)..................................................12, 13

2 U.S.C. § 434(b)(3)(A) (Supp. II 2000)............................................12, 13

2 U.S.C. § 437g(a)(4)-(6), (d) (Supp. II 2000) .........................................15

2 U.S.C. § 437g(d)(1)(A)(ii) (Supp. II 2000) ..............................................2

2 U.S.C. § 439a (Supp. II 2000) .............................................................15

2 U.S.C. § 441a (Supp. II 2000) ...................................................*passim*

2 U.S.C. § 441a(a)(8) (Supp. II 2000) ...........................................*passim*

2 U.S.C. § 441b (Supp. II 2000) .............................................................15

2 U.S.C. § 441b(b)(2) (Supp. II 2000) ......................................................6

2 U.S.C. § 441c (Supp. II 2000) .............................................................15

2 U.S.C. § 441c(a)(1) (Supp. II 2000) ......................................................6

2 U.S.C. § 441e (Supp. II 2000) .............................................................15

2 U.S.C. § 441e(a)(1) (Supp. II 2000) ......................................................6

2 U.S.C. § 441f (1976) ...........................................................................16

2 U.S.C. § 441f (Supp. II 2000)....................................................*passim*

2 U.S.C. § 441k (Supp. II 2000) .............................................................15

2 U.S.C. § 610(d) (2006) ...........................................................................6

5 U.S.C. § 8902a(a)(2)(A) (2006)..............................................................6

8 U.S.C. § 1426 (2006) ...........................................................................16

12 U.S.C. § 1831r(a) (2006) ......................................................................6

18 U.S.C. § 371 (Supp. II 2000)................................................................7

18 U.S.C. § 608(b)(6) (Supp. IV 1970) ....................................................18

NOTICE OF MOTION AND MOTION TO
DISMISS THE INDICTMENT; MEMORANDUM
OF POINTS AND AUTHORITIES

1

**TABLE OF AUTHORITIES**
2                                                                     **(continued)**

Page
3      18 U.S.C. § 610 (1970)...................................................................................17

4      18 U.S.C. § 610 (Supp. II 1970).....................................................................18

5      18 U.S.C. § 614 (Supp. IV 1970) ...................................................................16

6      18 U.S.C. § 1001 (Supp. II 2000) ..............................................................*passim*

7      18 U.S.C. § 1344(1) (Supp. V 1994)................................................................9

8      18 U.S.C. § 1954 (2006)...................................................................................6

9      31 U.S.C. § 5324 (1988)..................................................................................10

10     Federal Election Campaign Act of 1971, Pub. L. 92-225, § 310, 86 Stat. 3
           (Feb. 7, 1972)...........................................................................................16, 18
11
       Federal Election Campaign Act Amendments of 1974, Pub. L. 93-443, 88
12         Stat. 1263 (Oct. 15, 1974)........................................................................16, 18

13     Federal Election Campaign Act Amendments of 1976, Pub. L. 94-283, 90
           Stat. 475 (May 11, 1976)...............................................................................16
14

15                                                       **RULES**
       Fed. R. Crim. P. 12(b)(2)................................................................................11
16
       Fed. R. Evid. 201(b)(2)...................................................................................13
17

18                                         **LEGISLATIVE MATERIALS**
       117 Cong. Rec. 29,295 (1971).........................................................................17
19
       117 Cong. Rec. 43,379 to 43,391 (1971).........................................................18
20
       117 Cong. Rec. 43,379 (1971).........................................................................18
21
       117 Cong. Rec. 43,381 (1971).........................................................................18
22
       117 Cong. Rec. 43,391 (1971).........................................................................18
23
       H.R. 11060, 92nd Cong. (1971)..................................................................17, 18
24
       S. 382, 92nd Cong. (1971)...............................................................................17
25
       S. Rep. No. 93-1237 (1974) (Conf. Rep.),
26         *as reprinted in* 1974 U.S.C.C.A.N. 5618......................................................18

27

28

**TABLE OF AUTHORITIES**
(continued)

Page

<u>SECONDARY SOURCES</u>

2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 46:1 (7th ed. 2008) ........................................................................5

Allison R. Hayward & Bradley A. Smith, *Don't Shoot the Messenger: the FEC, 527 Groups, and the Scope of Administrative Authority*, 4 Election L.J. 82 (2005)........................................................................21

NOTICE OF MOTION AND MOTION TO
DISMISS THE INDICTMENT; MEMORANDUM
OF POINTS AND AUTHORITIES

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## INTRODUCTION

3   An indictment that fails to adequately charge an offense is jurisdictionally

4   defective and must be dismissed.  The Indictment in this case alleges that defendant

5   Pierce O'Donnell reimbursed campaign contributions made by various other

6   individuals, all of whom used their true names in making their contributions.

7   Mr. O'Donnell is charged, however, with "mak[ing] a contribution in the name of

8   another" in violation of a section of the Federal Election Campaign Act ("FECA"),

9   2 U.S.C. § 441f (Supp. II 2000).

10   By its express terms, § 441f does not prohibit reimbursement of

11   contributions, and no court has ever held that it does.  The text of § 441f simply

12   does not proscribe reimbursing someone for a contribution made using his or her

13   true name.  Consequently, the conspiracy and direct violation counts, Counts One

14   and Two, fail to state an offense and must be dismissed.  Even if ambiguity existed

15   in the statutory proscription, Counts One and Two still must be dismissed because,

16   as the Supreme Court recently reiterated, "[w]e interpret ambiguous criminal

17   statutes in favor of defendants, not prosecutors." *United States v. Santos*, 553 U.S.

18   ---, 128 S. Ct. 2020, 2028, 170 L. Ed. 2d 912 (2008) (Scalia, J., plurality opinion).

19   Count Three, which charges Mr. O'Donnell with causing the treasurer of an

20   authorized political committee of a candidate for federal office ("EFP") to make a

21   false statement to the Federal Election Commission ("FEC"), also does not state a

22   crime both because it fails to allege essential elements of a § 1001 offense, and

23   because the treasurer accurately reported the names of the individuals who made

24   the contributions.  Thus, the statement at issue was true, not false, and the making

25   of a true statement is insufficient, as a matter of law, to prove the crime charged in

26   Count Three.

27   Three provisions of the FECA are relevant to the resolution of this motion:

28

NOTICE OF MOTION AND MOTION TO
DISMISS THE INDICTMENT; MEMORANDUM
OF POINTS AND AUTHORITIES

1
2
3
4
5
6
7
8
9

1. Section 441f: "No person shall make a contribution in the name of another person or knowingly permit his name to be used to effect such a contribution, and no person shall knowingly accept a contribution made by one person in the name of another person." 2 U.S.C. § 441f.

2. The definition of "contribution" for purposes of 441f: "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office." 2 U.S.C. § 431(8)(A)(i) (Supp. II 2000).

3. The definition of contribution for purposes of § 441a only (the provision setting aggregate campaign contribution limits): "all contributions made by a person, either directly or indirectly, . . . including contributions which are in any way earmarked or otherwise directed through an intermediary or conduit to such candidate, shall be treated as contributions from such person to such candidate." 2 U.S.C. § 441a(a)(8) (Supp. II 2000).

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Applying these provisions to the Indictment shows that the express language of § 441f is unambiguous and does not prohibit Mr. O'Donnell's alleged conduct.

Given the significant First Amendment implications, Congress has carefully regulated contributions to elections. Reimbursements are addressed by the FECA under 2 U.S.C. § 441a (Supp. II 2000), which limits the aggregate amount of contributions a person can make to a candidate. Congress specifically made the conduct alleged in Count Two—reimbursements of contributions made by others totaling more than $10,000—a misdemeanor under § 441a. 2 U.S.C. § 437g(d)(1)(A)(ii) (Supp. II 2000). In its apparent zeal to charge a felony, the government has impermissibly stretched § 441f beyond the breaking point, ignoring the statute's plain meaning and numerous principles of statutory construction. Similarly, the government has also tried to morph Mr. O'Donnell's conduct into a violation of 18 U.S.C. § 1001 (Supp. II 2000), although again the factual allegations do not support the charge.

Prosecutorial discretion may permit the government to choose among available charges, assuming no improper motivation for its choices. It does not, however, allow the government to charge as a felony conduct that Congress has, at most, elected to punish only as a misdemeanor. The Indictment must be dismissed.

NOTICE OF MOTION AND MOTION TO
DISMISS THE INDICTMENT; MEMORANDUM
OF POINTS AND AUTHORITIES

1           **ARGUMENT**

2   **I.   THE INDICTMENT MUST BE DISMISSED BECAUSE IT FAILS TO
        ALLEGE THAT MR. O'DONNELL COMMITTED CRIMES UNDER
3       SECTIONS 441F, 371, AND 1001**

4       **A.   An Indictment That Fails to Allege a Crime Must Be Dismissed**

5           Failure to allege a crime is a jurisdictional defect in an indictment that

6   requires dismissal. *See United States v. Laub*, 385 U.S. 475, 486, 87 S. Ct. 574, 17

7   L. Ed. 2d 526 (1967) (affirming the dismissal of an indictment because "the

8   indictment . . . [did] not allege a crime"); *United States v. Sampson*, 371 U.S. 75,

9   76, 78-79, 83 S. Ct. 173, 9 L. Ed. 2d 136 (1962) (on a motion to dismiss, an

10  indictment is evaluated in light of the sufficiency of its allegations to charge an

11  offense); *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999) ("[I]f

12  properly challenged prior to trial, an indictment's complete failure to recite an

13  essential element of the charged offense is . . . a fatal flaw requiring dismissal of the

14  indictment.").

15      **B.   Count Two Does Not Allege a Crime Under Section 441f**

16          **1.   The Indictment Alleges That Mr. O'Donnell "Reimbursed"
                Others Making "Contributions" in Their True Names**
17
        Counts One and Two are based on Mr. O'Donnell's alleged conduct of
18
    having "reimbursed" other persons for "contributions" those persons made to EFP
19
    using their true names.  In pertinent part, Count Two alleges that:
20
            [S]pecifically, Defendant O'DONNELL knowingly and
21          willfully caused other persons ***to contribute*** to EFP . . .
            and advanced to those persons and ***reimbursed*** those
22          persons a total of more than $10,000 for ***their***
            ***contributions*** . . . .
23
    Indictment at 7 (emphasis added).[1]  Likewise, Count One alleges that:
24
            Defendant  .  .  .  would solicit individuals to ***make***
25          ***contributions*** to EFP, and would inform such individuals
            that he would reimburse ***their contributions***; [and] . . .
26          would instruct and cause unindicted co-conspirator D.V.

27      _____
            [1] Although the Indictment refers to "advance[s]" as well as
28  "reimburse[ments]," the allegations in the Indictment pertain only to
    reimbursements, not advances.

to solicit employees of his law firm and other individuals **to make contributions** to EFP that **he would reimburse**.

Indictment at 4 (emphasis added). Overt Acts 1-7 in Count One similarly allege that Mr. O'Donnell solicited "contributions" or caused others to make "contributions," and Overt Acts 8-12 allege that such contributions were "reimbursed." Indictment at 5-6.

The government alleges that Mr. O'Donnell, acting principally through unindicted co-conspirator D.V., would solicit others to make contributions and that Mr. O'Donnell then reimbursed or caused the reimbursement of those contributors for the amounts they contributed. The government does not allege, however, that the contributions themselves were made using anything other than the contributors' true names. The plain language of § 441f appropriately does not address the solicitation of political contributions, conduct which enjoys plenary First Amendment protection. *See, e.g., Buckley v. Valeo*, 424 U.S. 1, 25, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976). Thus, to determine if Count Two states a crime, the Court need only consider whether § 441f prohibits reimbursements.

### 2. The Express Language of Section 441f Is Unambiguous and Does Not Cover Reimbursements

The plain language of § 441f is clear and unambiguous:

> No person shall make a contribution in the name of another person or knowingly permit his name to be used to effect such a contribution . . . .

2 U.S.C. § 441f. Section 441f prohibits a person from making a contribution and providing a false name; it does not proscribe reimbursing a contribution made by another person using his or her true name. No court has ever held that § 441f prohibits reimbursement of contributions made by others using their true names.[2]

---

[2] The United States' prosecution of Michael Goland did not hold to the contrary. Goland advanced $120,000 to benefit a candidate, and then attempted to conceal his identity by arranging for 56 persons to make payments with the understanding that he would reimburse them. *Goland v. United States*, 903 F.2d 1247, 1251-52 (9th Cir. 1990). Goland was charged with violating, *inter alia*, §§ 441a and 441f. His first trial resulted in a mistrial, *see United States v. Goland*, 897 F.2d 405, 407 (9th Cir. 1990), and he unsuccessfully challenged his indictment on First Amendment grounds in a separate civil action under the FECA. *Goland v.*

NOTICE OF MOTION AND MOTION TO
DISMISS THE INDICTMENT; MEMORANDUM
OF POINTS AND AUTHORITIES

This plain meaning of the words used in § 441f controls:

> [T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms.

*Caminetti v. United States*, 242 U.S. 470, 485, 37 S. Ct. 192, 61 L. Ed. 442 (1917); *see Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450, 122 S. Ct. 941, 151 L. Ed. 2d 908 (2002) (the "[t]he inquiry ceases" if the text is plain and unambiguous). Moreover, "[w]here the words of the statute are clear and free from ambiguity, the letter of the statute may not be disregarded under the pretext of pursuing its spirit." 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 46:1 (7th ed. 2008) (footnotes, quotation marks, and citations omitted). Unless otherwise indicated, "words [in a statute] will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979). Applying these principles, § 441f prohibits a contributor from making a contribution and using another's name; however, it does not prohibit reimbursements to others for contributions made using their true names.

      a.    *The Statutory Text Does Not Proscribe Reimbursements*

The text of § 441f does not prohibit "reimbursing" a "contribution." Thus, to find that the statute does prohibit Mr. O'Donnell's conduct alleged in the Indictment would require the Court to read that prohibition into the statute. Significantly, Congress has in other contexts explicitly prohibited

---

(continued...)

*United States*, 903 F.2d at 1262. Neither case resolved whether § 441f prohibited reimbursements. Goland was re-indicted under § 441a, but not § 441f. *See United States v. Goland*, 959 F.2d 1449, 1451 (9th Cir. 1992). He was convicted under § 441a and, on appeal, unsuccessfully challenged whether § 441a(a)(8)'s definition of "contribution" included reimbursements. *Id.* at 1452. Because a violation of § 441a is not charged here, the Goland cases have no bearing on this case.

NOTICE OF MOTION AND MOTION TO DISMISS THE INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1 "reimbursements,"[3] but chose not to do so in § 441f. Nor does the definition of

2 "contribution" applicable to § 441f include amounts paid for the purpose of

3 reimbursing others for "contributions." 2 U.S.C. § 431(8)(A) (Supp. II 2000).

4            b.    *The Statute Does Not Proscribe Indirect Contributions*

5        Section 441f does not even prohibit "indirectly" making a contribution in the

6 name of another. Congress has frequently explicitly reached "indirect" conduct,

7 including in other statutes restricting campaign contributions. *See* 2 U.S.C. §

8 441b(b)(2) (Supp. II 2000) (prohibiting "any direct or indirect payment,

9 distribution, loan, advance, deposit, or gift of money, or any services, or anything

10 of value" from corporations, banks, and labor organizations to a campaign); 2

11 U.S.C. § 441e(a)(1) (Supp. II 2000) (prohibiting foreign nationals from making

12 contributions "directly or indirectly"); 2 U.S.C. § 441c(a)(1) (Supp. II 2000)

13 (prohibiting government contractors from "directly or indirectly . . . mak[ing] any

14 contribution of money or other things of value" to political parties, committees, or

15 candidates).[4] Significantly, Congress chose not to prohibit "indirectly" making a

16 contribution in the name of another in § 441f. Rather, Congress dealt with indirect

17 contributions in a different provision of the FECA: Congress defined contributions

18 that count against § 441a's aggregate contribution limits to include "indirect"

19 contributions, such as those directed through intermediaries or conduits:

20            For purposes of the limitations imposed by this section,
             all contributions made by a person, either **directly or**
21           **indirectly**, . . . including contributions which are in any
             way earmarked **or otherwise directed through an**

22    _____
      [3] *See* 2 U.S.C. § 31-2 (2006) (restricting the value of gifts a Senator may
23   accept and defining a gift to include "reimbursement for other than necessary
      expenses"); 2 U.S.C. § 610(d) (2006) (prohibiting the Congressional Budget Office
24   from reimbursing an employee for certain student loan payments); 5 U.S.C.
      § 8902a(a)(2)(A) (2006) (prohibiting health care providers from providing
25   payment, either directly or through reimbursements, to debarred insurance carriers).

      [4] Congress has also frequently prohibited indirect or direct payments in
26   contexts outside of FECA. *See* 12 U.S.C. § 1831r(a) (2006) (prohibiting federal
      government assistance, "directly or indirectly," to satisfy claims on bank accounts
27   maintained outside of the United States); 18 U.S.C. § 1954 (2006) (prohibiting
      individuals from "directly or indirectly" offering financial benefits related to
28   employee benefit plans).

NOTICE OF MOTION AND MOTION TO
DISMISS THE INDICTMENT; MEMORANDUM
OF POINTS AND AUTHORITIES

1                      **intermediary or conduit** to such candidate, shall be

2                      treated as contributions from such person to such
candidate.

3 2 U.S.C. § 441a(a)(8) (emphasis added). The statutory text expressly limits this

4 definition of "contributions" to "the limitations imposed by [§ 441a]." *Id.* Thus,

5 this definition does not apply to § 441f. Congress's use of such limiting language is

6 purposeful and requires courts to accordingly limit the language's applicability. *Cf.*

7 *Barnhart*, 534 U.S. at 453-54 (a similar distinction in the Coal Industry Retiree

8 Health Benefit Act of 1992 limited the obligations that successors in interest owed

9 to retired miners). Section 441a's express application to direct and indirect

10 contributions, explicitly defined to include contributions "directed through an

11 intermediary or conduit," is in stark contrast to the terms of § 441f.

12       Congress could have criminalized the act of reimbursing others for campaign

13 contributions made by them using their true names. However, it did not do so in

14 § 441f, and prosecutors are not empowered to rewrite the statute to their liking.

15 Consequently, because the Indictment fails to allege a violation of the statute

16 charged, Count Two fails to state an offense and must be dismissed.

17     **C.**     **Count One Does Not State a Conspiracy to Violate Section 441f, in
Violation of 18 U.S.C. § 371, Because the Conduct Allegedly**

18              **Agreed to Does Not Violate Section 441f**

19       Because the conduct alleged in Count Two does not constitute a crime under

20 § 441f, Count One also fails to allege a crime. The essence of a conspiracy to

21 violate a federal criminal statute is an agreement to engage in conduct that violates

22 that statute. Here, the Indictment alleges an agreement to violate § 441f. However,

23 because the allegedly agreed to conduct does not violate that statute, as a matter of

24 law, the agreement to engage in that conduct is not a criminal conspiracy. *See Parr*

25 *v. United States*, 363 U.S. 370, 393, 80 S. Ct. 1171, 4 L. Ed. 2d 1277 (1960)

26 ("Inasmuch as the twentieth count charged petitioners with conspiring to commit

27 the offense complained of in Count 1, and inasmuch as, on the facts of this record,

28 that count cannot be sustained, it follows that petitioners' convictions upon the

twentieth count cannot stand."); *Ingram v. United States*, 360 U.S. 672, 680-81, 79 S. Ct. 1314, 3 L. Ed. 2d 1503 (1959) (reversing conspiracy convictions because defendants could not be convicted of the underlying crime).

Because the conduct alleged in the Indictment does not violate § 441f, *a fortiori* the alleged agreement to engage in that conduct cannot constitute a conspiracy to violate § 441f. Consequently, Count One must also be dismissed.

### D. Count Three Must Be Dismissed Because the Indictment Fails to Allege a Violation of 18 U.S.C. § 1001 and the Conduct Alleged in Count Three Is Insufficient, As a Matter of Law, to Prove the Crime Charged

Count Three charges that Mr. O'Donnell "knowingly and willfully caused the treasurer . . . to make a false statement, namely, that certain individuals . . . had each made a $2,000 contribution to EFP. . . ." in filings with the FEC. Indictment at 8. The Indictment alleges that the treasurer's statement was "false" because "defendant . . . had made those contributions by providing his money to those individuals . . . to make those contributions." *Id.*

Count Three must be dismissed for two independent reasons. First, it fails to allege the essential elements of a § 1001 violation in the context of FEC reporting. Second, the statement made by the treasurer to the FEC was indisputably true, not false, because the treasurer accurately reported the individuals who in fact made the contributions (even assuming, *arguendo*, that Mr. O'Donnell reimbursed them). An indisputably true statement cannot, as a matter of law, be the basis of the crime charged in Count Three.

#### 1. The Indictment Fails to Allege the Essential Elements of a Section 1001 Violation

An indictment that fails to allege all of the elements of a crime is jurisdictionally defective and must be dismissed, and this includes elements of an offense that are not expressly set forth in the statute but are required by caselaw. *United States v. Omer*, 395 F.3d 1087, 1089 (9th Cir. 2005) (per curiam).[5]

---

[5] The defendant in *Omer* was indicted for executing or attempting to execute a scheme or artifice to defraud a financial institution, in violation of 18 U.S.C.

1    Accordingly, if caselaw requires a heightened level of intent beyond the statutory

2    language, the terms of the indictment must define "the proper mens rea" necessary

3    for conviction. *See United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999)

4    (reversing conviction under the Hobbs Act because the indictment failed to recite

5    the "implied and necessary" intent "not present in the statutory language"); *cf.*

6    *United States v. Awad*, 551 F.3d 930, 936 (9th Cir. 2009) (citation omitted)

7    (omission of "willfully" was not fatal to an indictment, but only because the

8    indictment alleged "the essential facts with sufficient specificity" to infer the

9    definition of "willfully" required under the charged offense).

10        The Indictment's boilerplate reference to "knowingly and willfully" in Count

11    Three fails to identify the *mens rea* required to convict a person for causing a false

12    statement in the context of FEC reporting. Under Count Three, the United States

13    must prove that Mr. O'Donnell: (1) knew of the treasurer's legal duty to accurately

14    report the actual source of the contributions to the FEC, (2) acted with the specific

15    intent to cause the treasurer to submit an inaccurate report to the FEC, and (3) knew

16    his own actions to be unlawful. *See United States v. Curran*, 20 F.3d 560, 570-71

17    (3d Cir. 1994). These elements—which define the statutory language "knowingly

18    and willfully" in this context—must be adequately pled in the Indictment because

19    they constitute the applicable *mens rea* in this case. *See Du Bo*, 185 F.3d at 1179.

20    This failure to allege essential elements of the offense requires the dismissal of

21    Count Three.

22        The federal courts of appeal have identified two competing definitions of

23

24   <u>(continued...)</u>

25   § 1344(1) (Supp. V 1994), but his indictment failed to allege the materiality of the
scheme itself. Although § 1344(1) did not expressly require materiality, Supreme

26   Court precedent made clear that materiality was an element of the offense. 395
F.3d at 1088-89 (citing *Neder v. United States*, 527 U.S. 1, 22-23, 119 S. Ct. 1827,

27   144 L. Ed. 2d 35 (1999)). The failure to allege this "essential element of the
charged offense" was a "fatal flaw requiring dismissal of the indictment." *Id.* at

28   1089.

1  willfulness for a § 1001 charge for causing false statements to the FEC: the

2  standard, described above, adopted by the Third Circuit in *Curran* and the standard

3  adopted by the D.C. Circuit in *United States v. Hsia*, 176 F.3d 517, 522 (D.C. Cir.

4  1999). *Curran* followed the Supreme Court's holding in *Ratzlaf v. United States*,

5  which found that a defendant's knowledge of unlawfulness was an essential

6  element of the crime of structuring deposits to avoid banks' reporting requirements,

7  in violation of 31 U.S.C. § 5324 (1988). 510 U.S. 135, 136-37, 114 S. Ct. 655, 126

8  L. Ed. 2d 615 (1994). *Curran* applied *Ratzlaf* to the criminal causation of § 1001

9  violations because both the structured transactions in *Ratzlaf* and contribution

10 reimbursements in *Curran* were prosecuted as violations of statutory schemes that

11 regulated activity that was not inherently wrongful and imposed third-party

12 disclosure requirements. *Curran*, 20 F.3d at 569.

13    *Hsia* held that, in the context of § 1001 charges for false statements to the

14 FEC, "willfulness" required the government to show only that the defendant acted

15 intentionally. 176 F.3d at 522.

16    The Ninth Circuit has squarely rejected the *Hsia* standard as the correct

17 standard for willfulness, especially in the regulatory context. For example, the

18 Ninth Circuit rejected jury instructions defining "willfully" as "deliberately,

19 voluntarily, and intentionally" in the context of a criminal scheme to defraud

20 Medicare, *Awad*, 551 F.3d at 939-40 (citation omitted), and rejected jury

21 instructions defining "willfully" as "knowingly and intentionally" in the context of

22 a criminal violation of regulations concerning the occupancy of public lands,

23 *United States v. Henderson*, 243 F.3d 1168, 1170-73 (9th Cir. 2001).

24    Moreover, the Ninth Circuit has recognized that the government must show a

25 heightened level of intent when innocent conduct might trigger criminal liability

26 under complex statutory schemes. *See Henderson*, 243 F.3d at 1172 (requiring a

27 heightened showing of intent in such situations) (citation omitted); *Hanlester*

28 *Network v. Shalala*, 51 F.3d 1390, 1400 (9th Cir. 1995) (applying *Ratzlaf* to hold

NOTICE OF MOTION AND MOTION TO
DISMISS THE INDICTMENT; MEMORANDUM
OF POINTS AND AUTHORITIES

1    that the government must prove a defendant (a) knew the specific law that

2    prohibited the conduct and (b) engaged in the prohibited conduct with the specific

3    intent to disobey the law, in order to show a violation of the Medicare-Medicaid

4    anti-kickback statute).

5          Accordingly, relevant Ninth Circuit authority follows *Curran* rather than

6    *Hsia* and requires that the elements identified in *Curran* be pled and proven as

7    essential elements of the crime charged.  The Indictment's failure to allege the

8    essential elements of the crime as set forth in the caselaw defining "willfulness"

9    requires the dismissal of Count Three.

10         **2.    The Treasurer's Statement Was Indisputably True**

11         Even if Count Three had adequately alleged the essential elements of the

12   crime, dismissal would still be required because Mr. O'Donnell has a complete

13   defense to § 1001 liability, namely that the treasurer's statement to the FEC was

14   indisputably true.  *See United States v. Camper*, 384 F.3d 1073, 1076 (9th Cir.

15   2004) ("indisputable truth" is an affirmative defense to charges of making a false

16   statement under § 1001).  Indeed, even if an answer is misleading in context, its

17   truth precludes false statement liability under § 1001.  *See United States v.*

18   *Mayberry*, 913 F.2d 719, 721-22 (9th Cir. 1990) (defendant's bank account balance

19   on a HUD verification form was true, even though misleading, where defendant

20   borrowed money for one day for the purpose of showing increased assets).

21         Although indisputable truth is an affirmative defense, rather than an

22   allegation of a deficiency in the Indictment, resolution of this issue pre-trial is

23   appropriate as a defense that the Court can determine without trial of the general

24   issue.  Fed. R. Crim. P. 12(b)(2).  Where the factual allegations in the Indictment, if

25   proven, would not be sufficient to prove the elements of the crime charged, the

26   Indictment may be dismissed.  *See United States v. Levin*, 973 F.2d 463, 469 (6th

27   Cir. 1992).  As *Levin* makes clear, it is a senseless waste of resources to delay an

28   inevitable dismissal to a later point in the proceedings when a "defense is capable

NOTICE OF MOTION AND MOTION TO
DISMISS THE INDICTMENT; MEMORANDUM
OF POINTS AND AUTHORITIES

1     of determination" prior to trial. *Id.* at 467-68. The Ninth Circuit agrees with this

2     common-sense rule. When the parties do not dispute the facts and the district court

3     "face[s] . . . a pure issue of law, . . . no good cause exist[s] to defer its ruling until

4     trial." *United States v. Phillips*, 367 F.3d 846, 855 (9th Cir. 2004). Accordingly,

5     because the treasurer's statement is indisputably true, proof of the facts of Mr.

6     O'Donnell's conduct alleged in the Indictment would not be sufficient as a matter

7     of law to prove the crime charged in Count Three and it must be dismissed.

8          The FECA requires treasurers to report to the FEC the identity of each person

9     "who makes a contribution," and broadly defines "contribution" to include

10    "anything of value" given, loaned, advanced, or deposited "for the purpose of

11    influencing" a federal election. 2 U.S.C. §§ 431(8)(A)(i), 434(a)(1), 434(b)(3)(A)

12    (Supp. II 2000). The FECA imposes no obligation on the "original source" of a

13    contribution to report him- or herself to the treasurer. Instead, the FECA clearly

14    establishes that the individuals who actually tendered the money to EFP—not

15    Mr. O'Donnell—had the legal obligation to disclose any "original source" of their

16    contributions. 2 U.S.C. § 441a(a)(8) ("The intermediary or conduit shall report the

17    original source and the intended recipient of such contribution to the Commission

18    and to the intended recipient."). The FECA thus draws a clear distinction between

19    a "contributor" to be identified in campaign contribution reports and an "original

20    source" of the funds contributed. *See id.*

21         Accordingly, the treasurer properly and truthfully reported to the FEC as

22    "contributors" the persons alleged in the indictment as "conduits," all of whom

23    tendered money to the campaign. The treasurer's "statement" to the FEC that

24    identified the named persons as "contributors" was Schedule A of EFP's quarterly

25    "Report of Receipts and Disbursements," FEC Form 3P, filed on April 15, 2003.

26    *See* Exhibit 1.[6] The FEC's instructions for completing Form 3P direct that "[e]ach

---

27    [6] Mr. O'Donnell requests that the Court take judicial notice of the facts
      contained in EFP's April 15, 2003, quarterly report filed with the FEC. Judicial
28    notice is appropriate because such facts are not subject to reasonable dispute and
      are capable of accurate and ready determination through the FEC's official website.

NOTICE OF MOTION AND MOTION TO
DISMISS THE INDICTMENT; MEMORANDUM
OF POINTS AND AUTHORITIES

1   contribution made by a person who has made one or more contributions during the

2   election cycle aggregating in excess of $200 must be itemized on Schedule A-P."

3   *See* Exhibit 2 at 4.  The treasurer's statement to the FEC was that the relevant

4   contributions were all "contributions from . . . individuals/persons other than

5   political committees." *See* Exhibit 1 at 2 (line 17(a)); *id.* at 39, 515, 572, 1008,

6   1322, 1330, 1502, 1805, and 1825-26 (itemized receipts for the contributions at

7   issue).  Because FECA, as discussed above, clearly requires that persons tendering

8   the money to the campaign be reported as the contributors, the treasurer's statement

9   identifying the individuals who tendered the money was indisputably true.[7]  The

10   Indictment has alleged a true statement—"that certain individuals . . . had each

11   made a $2,000 contribution"—as the "false statement" underlying Count Three.

12        The charge in Count Three is yet another example of the dangers, recognized

13   by the *Curran* court, of prosecuting regulatory offenses through generally

14   applicable criminal statutes such as § 1001:

15              Although section 1001 is broad in its scope, it is not an
16              all-encompassing counterpart of underlying agency
                 reporting obligations.   To read it as the government

17

---

(continued...)

18   Fed. R. Evid. 201(b)(2); *see* http://www.fec.gov/finance/disclosure/
19   disclosure_data_search.shtml (last visited Feb. 18, 2009).

20       [7] The decisions of the United States Court of Appeals for the District of
     Columbia Circuit in *Hsia*, 176 F.3d at 522, and *United States v. Kanchanalak*, 192
21   F.3d 1037, 1046 (D.C. Cir. 1999), although arguably reaching a contrary
     conclusion, are neither controlling nor persuasive. Those cases fail to consider the
22   pertinent provisions of the statute that are detailed above. Moreover, to avoid
     liability under § 1001 under the Court of Appeals' rulings, a treasurer would have
23   to report not the names of the contributors, but rather any original source of such
     funds as the same might be known to the treasurer. *See Hsia*, 176 F.3d at 524
24   ("[section] 434(b)(3)'s demand for identification of the 'person . . . who makes a
     contribution' is not a demand for a report on the person in whose name money is
25   given; it refers to the true source of the money."); *Kanchanalak*, 192 F.3d at 1044
     (citing *Hsia*, 176 F.3d at 524). To hold that the treasurer is not required to report to
26   the FEC the names of those who actually tender funds to a campaign committee is
     directly at odds with the clear dictates of the FECA, which requires the
27   identification of those who tender campaign contributions to the committee. *See* 2
     U.S.C. §§ 434(a)(1), 434(b)(3)(A), 441a(a)(8). Where the treasurer reports accurate
28   information that is expressly required to be reported, it is absurd to assert that such
     statements were false.

1                   contends here, would in effect broaden the reporting duty
2                   imposed on campaign treasurers to be applicable to
                  contributors as well. We find no indication that Congress
3                   intended such an expansion of its regulatory scheme.

*Curran*, 20 F.3d at 570.

4      Count Three must be dismissed for its failure to allege the essential elements

5 of the offense and because the conduct alleged—an indisputably true statement to

6 the FEC—is insufficient, as a matter of law, to prove the crime charged in Count

7 Three.

8 **II.   EVEN IF THE TERMS OF SECTION 441F WERE AMBIGUOUS,**
9 **FUNDAMENTAL PRINCIPLES OF STATUTORY CONSTRUCTION**
      **REINFORCE THE CONCLUSION THAT THE INDICTMENT MUST**
10 **BE DISMISSED**

11      As shown above, because the language of § 441f is unambiguous and does

12 not prohibit reimbursement of campaign contributions, there is no need to employ

13 the traditional aids to statutory construction used to resolve ambiguous statutory

14 terms. Even if § 441f were ambiguous as applied to the alleged conduct, such aids

15 would all reinforce the conclusion that § 441f does not prohibit reimbursements.

16      **A.   Construing Provisions of the FECA in Light of Each Other and**
17         **Giving Effect to All FECA Provisions Confirm That Section 441f**
         **Does Not Prohibit Reimbursements**

18      Tenets of statutory interpretation require that "a statute is to be considered in

19 all its parts when construing any one of them." *Lexecon Inc. v. Milberg Weiss*

20 *Bershad Hynes & Lerach*, 523 U.S. 26, 35-36, 118 S. Ct. 956, 140 L. Ed. 2d 62

21 (1998). The FECA is a comprehensive statutory regime governing the election of

22 federal officials. *See Buckley v. Valeo*, 519 F.2d 821, 831 (D.C. Cir. 1975) (en

23 banc) (per curiam) (the 1974 amendments to the FECA were "by far the most

24 comprehensive[] reform legislation [ever] passed by Congress concerning the

25 election of [federal officials]"), *aff'd in part*, 424 U.S. 1, 143-44 (1976) (upholding

26 the FECA's contribution limits, disclosure and reporting provisions, and the public

27 financing scheme). The FECA regulates the organization and registration of

28

1     political committees. 2 U.S.C. §§ 431(4), 432, 433 (Supp. II 2000). Political

2     committees are subject to reporting requirements and limits on the purposes to

3     which contributed funds may be allocated. 2 U.S.C. § 439a (Supp. II 2000). The

4     FECA caps certain contributions and prohibits contributions by national banks,

5     corporations, labor organizations, government contractors, foreign nationals,

6     minors, and persons in the name of other persons. 2 U.S.C. §§ 441a, 441b, 441c,

7     441e, 441f, 441k (Supp. II 2000). Finally, the FECA provides for civil and

8     criminal penalties. 2 U.S.C. §§ 437g(a)(4)-(6), (d) (Supp. II 2000).

9        Clearly, Congress has carefully regulated campaign contributions. Congress

10    expressly limited reimbursements and indirect contributions in statutes other than

11    § 441f. *See supra* Part I.B.2. Congress specifically provided that § 441a's

12    contribution limits would include indirect contributions, explicitly including

13    contributions through conduits. 2 U.S.C. § 441a(a)(8). Congress also prohibited

14    making contributions "directly or indirectly" in statutes other than in § 441f. *See*

15    *supra* Part I.B.2.b. Unsurprisingly, in *United States v. Kanchanalak*, the court held

16    that § 441e, which proscribes indirect or direct contributions by foreign nationals,

17    covered contributions that foreign nationals make through domestic "conduits."

18    192 F.3d 1037, 1047-48 (D.C. Cir. 1999).

19        When Congress uses such specific language in one statute and omits that

20    same language in another statute, courts presume that "'Congress act[ed]

21    intentionally and purposely in the disparate inclusion or exclusion.'" *Barnhart*, 534

22    U.S. at 452 (citation omitted). Thus, the presence of such language in

23    §§ 441a(a)(8) and 441e and its absence in § 441f compel the conclusion that § 441f

24    does not reach reimbursements or "conduit" contributions.

25        Moreover, construing "contribution" to include indirect or "conduit"

26    contributions in § 441f would render superfluous the language in § 441a(a)(8) that

27    specifically applies "conduit" contributions against aggregate contributions limits,

28    because conduit contributions would otherwise already be included in the term

1    "contribution."  An interpretation of § 431(8)(A)(i) that renders § 441a(a)(8)

2    superfluous violates the principle "that a statute ought, upon the whole, to be so

3    construed that, if it can be prevented, no clause, sentence, or word shall be

4    superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S.

5    Ct. 441, 151 L. Ed. 2d 339 (2001) (internal citations and quotations omitted).

6        The Ninth Circuit recently applied this fundamental principle of statutory

7    construction in holding that the section of the Immigration and Nationality Act

8    forever denying citizenship to aliens who seek exemption from compulsory military

9    service, *see* 8 U.S.C. § 1426 (2006), did not apply to aliens who receive an early

10   honorable discharge from military duty. *Gallarde v. INS*, 486 F.3d 1136, 1143 (9th

11   Cir. 2007) (citing *TRW Inc.*, 534 U.S. at 31).  Applying the statute's penalty to

12   honorably discharged aliens would have made one section of the Act superfluous

13   and the omission of penalty language from another section irrelevant. *Id.*  It was

14   the court's "'duty to give effect, if possible, to every clause and word of a statute' . .

15   . ." *Id.* (quoting *United States v. Menasche*, 348 U.S. 528, 538-39, 75 S. Ct. 513,

16   99 L. Ed. 615 (1955)).  Interpreting § 441f as reaching "conduit" contributions

17   would violate this principle of statutory construction.

18       Consistent with the conclusion, drawn from the plain language of the statute,

19   the statutory context, and the other provisions of FECA, that § 441f does not

20   prohibit reimbursement of contributions made by others using their true names, the

21   FECA's legislative history contains no statements or other evidence suggesting that

22   § 441f prohibits the alleged conduct.  Indeed, the relevant legislative history

23   supports the conclusion that it does not.  Section 441f was originally enacted as

24   § 310 to the Federal Election Campaign Act of 1971, Pub. L. 92-225, § 310, 86

25   Stat. 3 (Feb. 7, 1972) ("1971 Act").[8]  The 1971 Act did not impose general

26

---

27   [8] Section 310 of the 1971 Act was codified at 18 U.S.C. § 614 (Supp. IV 1970), *see* Pub. L. 93-443, § 101(f)(1), 88 Stat. 1263 (Oct. 15, 1974), and
28   recodified in 1976 at 2 U.S.C. § 441f (1976).  *See* Pub. L. 94-283, § 325, 90 Stat. 494 (May 11, 1976).

NOTICE OF MOTION AND MOTION TO
DISMISS THE INDICTMENT; MEMORANDUM
OF POINTS AND AUTHORITIES

1  contribution limits, but did limit contributions from candidates' personal funds and

2  relatives. *Id.* at § 203, 86 Stat. 9.

3        On August 4, 1971, Senator Hugh Scott expressed concern that "a man of

4  influence" could easily effect "a great evasion" of the contribution limits by having

5  friends make contributions equivalent to funds they received from the candidate.

6  117 Cong. Rec. 29,295 (1971) (statement of Sen. Scott).  Raising this concern

7  despite the availability of § 441f suggests that Senator Scott construed § 441f as not

8  prohibiting reimbursements (or advances) of campaign contributions,[9] and there is

9  no record of any protest that § 441f covered such activity.

10        The legislative history also discloses that Congress specifically considered

11  whether "indirect or direct" language in proposed amendments to 18 U.S.C. § 610

12  (1970), the predecessor to 2 U.S.C. § 441b and which prohibited contributions by

13  national banks, corporations, and labor organizations, would prohibit

14  reimbursements by organizations or unions of contributions made by their

15  employees or members.  Prior to the 1971 Act, § 610 did not expressly cover

16  indirect payments. *See* 18 U.S.C. § 610 (1970).

17        On October 13, 1971, the Committee on House Administration reported H.R.

18  11060, which proposed adding a paragraph to § 610 that would, *inter alia*, define

19  the contributions that § 610 prohibited to include "direct or indirect"

20  contributions.[10]  On November 30, 1971, Representative Orval Hansen proposed

21  further amendment to § 610 that would keep the committee's "direct or indirect"

22  language.  In the ensuing debate, Representative Hansen affirmatively stated that

23  both H.R. 11060 and his proposed amendment would prohibit corporations or

24  unions from reimbursing members' or employees' donations to federal candidates

25  expressly because both the bill and his amendment prohibited "direct or indirect"

26

27       [9] Section 441f was introduced on January 28, 1971.  S. 382, 92nd Cong. § 260 (1971).

28       [10] H.R. 11060, 92nd Cong. § 8 (1971) (as reported Oct. 13, 1971).

NOTICE OF MOTION AND MOTION TO
DISMISS THE INDICTMENT; MEMORANDUM
OF POINTS AND AUTHORITIES

1  payments.[11]  Neither H.R. 11060 nor the Hansen amendment included a prohibition

2  against making payments in the name of another, and no member suggested that

3  such a prohibition was necessary to proscribe reimbursements.[12]  The final 1971

4  Act incorporated Representative Hansen's amendment largely *in toto*.[13]  The debate

5  regarding the Hansen amendment shows that Congress used the "direct or indirect"

6  language in the FECA, in this case in the predecessor to § 441b, to reach and

7  preclude reimbursements.  Congress did not include such "direct or indirect"

8  language in § 441f and did not otherwise suggest that it meant to prohibit

9  reimbursements under § 441f.

10         Finally, the Federal Election Campaign Act Amendments of 1974, Pub. L.

11  93-443, 88 Stat. 1263 (Oct. 15, 1974), enacted general campaign contribution limits

12  and the predecessor to 2 U.S.C. § 441a(a)(8).  *See* 18 U.S.C. § 608(b)(6) (Supp. IV

13  1970).  The conference committee report explained that the purpose behind

14  enacting § 441a(a)(8) was to accurately track the source of contributions, "even if

15  such contributions are made indirectly, are earmarked, or are directed through any

16  intermediary or conduit."  S. Rep. No. 93-1237 (1974) (Conf. Rep.), *as reprinted in*

17  1974 U.S.C.C.A.N. 5618, 5620.  As noted above, however, § 441a(a)(8)'s

18  definition of contributions includes indirect and conduit contributions solely for the

19  purposes of § 441a's contribution limits, not for § 441f.

20  **B.    Additional Principles of Statutory Interpretation Reinforce the
        Conclusion That the Indictment Must Be Dismissed**

21

22  **1.    The Rule of Lenity and the First Amendment Require That
        Any Ambiguity in the Statute Be Resolved in Mr.
        O'Donnell's Favor**

23

24         Last term, Justice Scalia reiterated that:

25  _____

   [11]  117 Cong. Rec. 43,381 (1971) (statements of Rep. Hansen); *id.* (statement
26  of Rep. Hays); *id.* (statement of Rep. Ford).

        [12]  *See* 117 Cong. Rec. 43,379 to 43,391 (1971).

27         [13]  *Compare* 117 Cong. Rec. 43,379 (1971) (reading by the clerk) *and* 117
   Cong. Rec. 43,391 (1971) (adoption of Hansen amendment) *with* Pub. L. 92-225, §
28  205, 86 Stat. 3, 10 (codified at 18 U.S.C. § 610 (Supp. II 1970)).

1
2
3
4
5
6
7

> Under a long line of our decisions, the tie must go to the defendant. ***The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them.*** . . . This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed. It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead . . . . ***We interpret ambiguous criminal statutes in favor of defendants, not prosecutors.***

8   *Santos*, 128 S. Ct. at 2025, 2026, 2028 (plurality opinion) (emphasis added and

9   citations omitted); *see also United States v. Bass*, 404 U.S. 336, 347, 92 S. Ct. 515,

10  30 L. Ed. 2d 488 (1971) ("[A]mbiguity concerning the ambit of criminal statutes

11  should be resolved in favor of lenity."). The rule of lenity is fundamental to

12  principles of due process. *See United States v. Wiltberger*, 18 U.S. (5 Wheat) 76,

13  95, 1820 WL 2133, 5 L. Ed. 37 (1820) ("The rule that penal laws are to be

14  construed strictly . . . is founded on the tenderness of the law for the rights of

15  individuals, and on the plain principle that the power of punishment is vested in the

16  legislative, not in the judicial department."). The rule of lenity requires any

17  question about the interpretation of § 441f to be resolved in Mr. O'Donnell's favor.

18  The rule of lenity applies to the construction of criminal statutes generally.

19  In this case, the First Amendment also dictates that ambiguities be resolved in

20  Mr. O'Donnell's favor to avoid an inappropriate "chilling effect" on otherwise

21  legitimate, indeed constitutionally protected, political activities. *Buckley*, 424 U.S.

22  at 40-41; *United States v. Kokinda*, 497 U.S. 720, 725, 110 S. Ct. 3115, 111 L. Ed.

23  2d 571 (1990) ("Solicitation is a recognized form of speech protected by the First

24  Amendment.") (citations omitted). Accordingly, § 441f should be narrowly

25  interpreted so as not to expand the restrictions on constitutionally-protected speech

26  beyond the text of the statute.

27
28

NOTICE OF MOTION AND MOTION TO
DISMISS THE INDICTMENT; MEMORANDUM
OF POINTS AND AUTHORITIES

1

2. **Section 441f Fails to Give Fair Notice That It Prohibits Reimbursements**

2

The rule of lenity is grounded in fundamental principles of due process. Due

3

process requires criminal laws to provide fair notice of what conduct is proscribed.

4

Laws must "give the person of ordinary intelligence a reasonable opportunity to

5

know what is prohibited, so that he may act accordingly." *Grayned v. City of*

6

*Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972).

7

Additionally, criminal laws must be construed strictly because "[a] vague law

8

impermissibly delegates basic policy matters to policemen, judges, and juries for

9

resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary

10

and discriminatory application." *Id.* at 108-09 (footnotes omitted).

11

Fair notice principles are of critical importance when otherwise-lawful

12

conduct may be subject to a penalty. The regulation of pollution is an apt example.

13

In 1995, the United States Court of Appeals for the District of Columbia Circuit

14

decided in *General Electric Co. v. EPA* that the Environmental Protection Agency

15

("EPA") failed to provide proper notice of prohibited conduct concerning the

16

disposal of certain heavy equipment. 53 F.3d 1324, 1328 (D.C. Cir. 1995). That

17

court ruled that because General Electric reasonably interpreted the regulations, *id.*

18

at 1333-34, the EPA could not punish General Electric under an alternative

19

interpretation of its regulations, even if also reasonable. *Id.* Although *General*

20

*Electric* concerned regulatory prohibitions, the Court of Appeals applied the

21

fundamental due process principle that no penalty may be imposed without proper

22

notice. *Id.* at 1328.

23

Similarly, in *United States v. Whiteside*, the government failed to show a

24

knowing and willful violation of § 1001 because the defendants' interpretation of

25

Medicare/Medicaid regulations concerning the reporting of debt interest was a

26

reasonable interpretation of the applicable law. 285 F.3d 1345, 1351-53 (11th Cir.

27

2002). The government charged the defendants with submitting cost reports that

28

- 20 -

1  classified debt interest based on the use of the funds at the time of filing the reports,

2  rather than the use of the funds at the time of the loan's origination. *Id.* at 1351.

3  Expert witnesses' conflicting testimony underscored the reasonableness of both

4  interpretations. *Id.* at 1352-53.  The government failed to prove beyond a

5  reasonable doubt that the statements at issue were false because no law "clearly

6  require[d]" the reports to reflect the funds' use at time of origination. *Id.* at 1352.[14]

7      Section 441f does not provide fair notice that it prohibits reimbursements,

8  and construing it as doing so invites arbitrary and discriminatory enforcement, a

9  particular concern in laws relating to campaign financing. *See* Allison R. Hayward

10  & Bradley A. Smith, *Don't Shoot the Messenger: the FEC, 527 Groups, and the*

11  *Scope of Administrative Authority*, 4 Election L.J. 82, 94 (2005) (the FEC's

12  adherence to the regime enacted by Congress "is especially important for the

13  Commission, which regulates in an area of important constitutional liberties, and

14  which has in the past been found to have overreached its administrative

15  jurisdiction.").  Due process principles accordingly dictate that § 441f not be

16  construed as prohibiting reimbursements.

17      **3.   Because Congress Has Not Expressly Prohibited**
           **Reimbursements in § 441f, Applying the Statute to Prohibit**
18         **Mr. O'Donnell's Alleged Reimbursements Would Violate**
           **the First Amendment**
19
       The indictment also must be dismissed because applying the prohibitions of §
20
   441f and 18 U.S.C. § 1001 to Mr. O'Donnell's conduct alleged in the indictment
21
   violates the First Amendment.
22
       First Amendment jurisprudence renders ineluctable the conclusion that
23
   contributing to a campaign as well as reimbursing others for contributing to a
24

25  _____

        [14] The fair notice principles articulated in *General Electric* and *Whiteside* are
26  also frequently violated through criminal enforcement of the tax code, another
   highly regulated area involving conduct that is not inherently unlawful. *See, e.g.,*
27  *United States v. Dahlstrom,* 713 F.2d 1423, 1428 (9th Cir. 1983) (overturning
   conviction for illegal tax shelter because "'It is settled that when the law . . . is
28  highly debatable, a defendant—actually or imputedly—lacks the requisite intent to
   violate it.'") (quoting *United States v. Critzer,* 498 F.2d 1160, 1162 (4th Cir. 1974)
   (regarding taxation of embezzled funds)).

NOTICE OF MOTION AND MOTION TO
DISMISS THE INDICTMENT; MEMORANDUM
OF POINTS AND AUTHORITIES

1   campaign are both protected conduct at the heart of the First Amendment.

2   Associating with others for purposes of financially supporting an election campaign

3   involves core First Amendment associational interests. *Buckley*, 424 U.S. at 15.

4   Likewise, providing financial support to a candidate and a campaign are forms of

5   protected political speech. *Id.* at 24-25. Thus, control and limitation of political

6   contributions "'implicate fundamental First Amendment interests,' namely, the

7   freedoms of 'political expression' and 'political association.'" *Randall v. Sorrell*,

8   548 U.S. 230, 246, 126 S. Ct. 2479, 165 L. Ed. 2d 482 (2006) (plurality op.)

9   (quoting *Buckley*, 424 U.S. at 15, 23); *see Village of Schaumburg v. Citizens for a*

10  *Better Env't*, 444 U.S. 620, 633, 100 S. Ct. 826, 63 L. Ed. 2d 78 (1980) ("Our cases

11  long have protected speech even though it is in the form of . . . a solicitation to pay

12  or contribute money.") (alterations to original and internal quotation marks

13  omitted).

14         Even assuming that Congress could prohibit reimbursement of campaign

15  contributions, dismissal is required because Congress could only do so with a

16  "closely drawn" statute, based on a carefully considered record establishing the

17  "sufficiently important" government interest necessary to justify such a restriction.

18  *Randall*, 548 U.S. at 247 (quoting *Buckley*, 424 U.S. at 25); *cf. Broadrick v.*

19  *Oklahoma*, 413 U.S. 601, 611-12, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973) ("It has

20  long been recognized that the First Amendment needs breathing space and that

21  statutes attempting to restrict or burden the exercise of First Amendment rights

22  must be narrowly drawn and represent a considered legislative judgment that a

23  particular mode of expression has to give way to other compelling needs of

24  society."). There can be no dispute that Congress did not expressly prohibit

25  reimbursements with a "carefully drawn" proscription in § 441f. Indeed, that

26  section of the FECA does not even address reimbursement of the campaign

27  contributions of others. Moreover, the legislative history contains none of the

28  findings that the Supreme Court has ruled would be needed to support such a

1    restriction on otherwise protected First Amendment activity. *See supra* Parts I.B.2.,
2    II.B.2.

3         Congress, not the prosecutor, must define what is and is not a federal crime.
4    *See, e.g., United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812) (stating that
5    the only federal crimes are those defined by statute and there is no federal common
6    law of crimes). Although Congress has taken the necessary steps to limit
7    *contributions*, it has not similarly limited, let alone prohibited, *reimbursement* of
8    contributions, the conduct which the government in this indictment alleges is a
9    crime. On the contrary, because Congress has required in § 441a that the person
10   who makes a contribution that is to be reimbursed report the "original source" of
11   any funds contributed, it has implicitly recognized that reimbursement may occur
12   and has taken no step in a "closely drawn" statute to prohibit it.

13        Thus, Congress has not acted through a "closely drawn" statute to prohibit
14   reimbursements and has not established the record that would be necessary to
15   support it having done so. Absent such a record, prosecutors cannot
16   constitutionally apply a statute of more general applicability, whether § 441f or 18
17   U.S.C. § 1001, to prohibit First Amendment protected activity such as
18   reimbursements of contributions. Accordingly, the Indictment must be dismissed.
19   *Edwards v. South Carolina*, 372 U.S. 229, 235-37 (1963). In *Edwards,* the Court
20   overturned criminal convictions under a statute of general application for conduct
21   otherwise protected by the First Amendment. The Court held that:

22            [I]t is clear . . . that in arresting, convicting, and punishing
              the petitioners under the circumstances disclosed by this
23            record, South Carolina infringed the petitioners'
              constitutionally protected rights of free speech, free
24            assembly, and freedom to petition for redress of their
              grievances.
25
     *Id.* at 235; *cf. NAACP v. Button*, 371 U.S. 415, 438 (1963) (noting, in the context of
26
     a declaratory judgment action brought prior to any enforcement, that "[p]recision of
27
     regulation must be the touchstone in an area so closely touching our most precious
28

WASHINGTON 1549410 (2K)

- 23 -

NOTICE OF MOTION AND MOTION TO
DISMISS THE INDICTMENT; MEMORANDUM
OF POINTS AND AUTHORITIES

1  freedoms"). The First Amendment therefore prohibits the government's attempt

2  here to apply criminal prohibitions to Mr. O'Donnell's alleged reimbursements.

3  That conduct is squarely within the protection of the First Amendment and its

4  exercise has not been circumscribed by a closely drawn prohibition based upon a

5  record that would justify government intrusion into a zone of protected activity.[15]

6  *See supra* Parts I.B.2., II.B.2.; *cf. Edwards*, 372 U.S. at 237 (noting that the breach

7  of the peace statute at issue was not "a precise and narrowly drawn regulatory

8  statute evincing a legislative judgment that certain specific conduct be limited or

9  proscribed").

10       In *United States v. Robel*, the Court affirmed the dismissal of an indictment

11  "on the ground that [the statute upon which charge was lodged] is an

12  unconstitutional abridgment of the right of association protected by the First

13  Amendment." 389 U.S. 258, 261, 88 S. Ct. 419, 19 L. Ed. 2d 508 (1967). As the

14  Ninth Circuit has explained, "Of course, an indictment sought under a statute that is

15  unconstitutional on its face or as applied will . . . be dismissed." *United States v.*

16  *Mayer*, 503 F.3d 740, 747 (9th Cir. 2007).[16] Here, the indictment presents to this

17  Court an unconstitutional application of statutes because the charges therein seek to

18  convict Mr. O'Donnell for criminal violations based on conduct squarely within the

19  protection of the First Amendment. The indictment, therefore, must be dismissed.[17]

20     [15] Mr. O'Donnell is not arguing that disclosure requirements for contributors
violate the First Amendment. *Cf. Hsia*, 176 F.3d at 525 (rejecting as frivolous a

21  First Amendment challenge to FECA's reporting requirements) (citing *Goland*, 903
F.2d at 1259-61 (rejecting claim that contributors have a right to contribute

22  anonymously)).

23     [16] In *Mayer*, the Ninth Circuit, noting that "investigations are less intrusive
than prosecutions," *id.* at 752, declined to dismiss an indictment for alleged First

24  Amendment violations that occurred in the course of an investigation due to the
defendant's failure to allege facts sufficient to suggest that a First Amendment

25  violation had occurred. *Id.* at 748. In this case, by contrast, Mr. O'Donnell is
subject to a prosecution, rather than just an investigation, that has violated his First

26  Amendment rights for the reasons stated above.

27     [17] Courts will narrowly interpret statutes to avoid constitutional infirmities,
*see, e.g., Boos v. Barry*, 485 U.S. 312, 330-31, 108 S. Ct. 1157, 99 L. Ed. 2d 333

28  (1988) (restricting enforcement of a statute implicating First Amendment activities
due to constitutional concerns), and have done so in the context of federal election
statutes, *see United States v. CIO*, 335 U.S. 106, 123-24 (1948) (narrowly

NOTICE OF MOTION AND MOTION TO
DISMISS THE INDICTMENT; MEMORANDUM
OF POINTS AND AUTHORITIES

**CONCLUSION**

For the reasons stated herein, the Indictment must be dismissed.

Dated:         March 16, 2009                    Respectfully Submitted,

WHITE & CASE LLP

George J. Terwilliger III

JONES DAY
Brian O'Neill
Frederick D. Friedman

Attorneys for Defendant
PIERCE O'DONNELL

_____

(continued...)

interpreting a limitation on certain political expenditures by labor unions in a
predecessor statute to the FECA to affirm the dismissal of an indictment on the
grounds that it failed to state a crime, thereby avoiding discussion of constitutional
infirmities found by the district court).  A narrow interpretation of § 441f would
require the dismissal of the Indictment for failure to state a crime.  *See supra* Part
I.B.

NOTICE OF MOTION AND MOTION TO
DISMISS THE INDICTMENT; MEMORANDUM
OF POINTS AND AUTHORITIES