UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO: 2:08-CR-872-SJO-1 |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| PIERCE O'DONNELL, | ) | Tuesday, June 2, 2009 |
| | ) | (10:31 a.m. to 11:29 a.m.) |
| Defendant. | ) | |


MOTION TO DISMISS CASE INDICTMENT

BEFORE THE HONORABLE S. JAMES OTERO,
UNITED STATES DISTRICT JUDGE


Appearances:              See next page

Court Recorder:           Margarita Lopez

Courtroom Deputy:         Victor Cruz

Transcribed by:           Exceptional Reporting Services, Inc.
                          14493 S. Padre Island Drive
                          Suite A-400
                          Corpus Christi, TX 78418-5940
                          361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>APPEARANCES FOR:</u>


The Government:              DENNIS MITCHELL, ESQ.
                            LAWRENCE S. MIDDLETON, ESQ.
                            Assistant United States Attorney
                            312 North Spring Street
                            Los Angeles, CA 90012


The Defendant:              BRIAN J. O'NEILL, ESQ.
                            FREDERICK D. FRIEDMAN, ESQ.
                            Jones Day
                            555 W. Flower Street
                            50th Floor
                            Los Angeles, CA 90071

                            GEORGE J. TERWILLIGER, III, ESQ.
                            White & Case, LLP
                            701 Thirteenth Street NW
                            Washington, DC 20005

1          **Los Angeles, CA; Tuesday, June 2, 2009; 10:31 a.m.**

2          **THE CLERK:**  All rise.

3                    **(CALL TO ORDER)**

4          **THE CLERK:**  This is item number two, case number CR-

5   08-00872-SJO; *United States of America versus Pierce O'Donnell.*

6          Counsel, please state your appearances.

7          **MR. MITCHELL:**  Good morning, your Honor; Dennis

8   Mitchell and Lawrence Middleton appearing on behalf of the

9   United States.

10         **THE COURT:**  Good morning.

11         **MR. MIDDLETON:**  Good morning.

12         **MR. TERWILLIGER:**  Good morning, your Honor; George

13  Terwilliger from White and Case and Brian O'Neill from Jones

14  Day for Mr. O'Donnell.

15         **MR. O'NEILL:**  Good morning, your Honor.

16         **THE COURT:**  Good morning.  Who will be arguing for

17  Mr. O'Donnell?

18         **MR. TERWILLIGER:**  I would, your Honor.

19         **THE COURT:**  And for the government?

20         **MR. MITCHELL:**   I will, your Honor; Dennis Mitchell.

21         **THE COURT:**  Let me compliment both sides first on the

22  pleadings that have been offered.  They have caused me to spend

23  quite a bit of time considering and contemplating the issues

24  that have been presented in the motion here.

25         The matter is here on a motion to dismiss the

1   indictment.  The defendant moves the Court to dismiss counts

2   one and two pursuant to FRCP 12(b)(3)(B) because the indictment

3   fails to allege that Mr. O'Donnell committed crimes under 2

4   U.S.C. 441(f) and Title 18, U.S.C. 37 and 1001.

5           The defendant, Mr. O'Donnell, also alleges that the

6   conduct in count three is insufficient as a matter of law to

7   prove the claim charged, and he also claims that the indictment

8   violates his First Amendment rights.

9           I'd like to keep counsel focused on the claims raised

10  in reference to counts one and two in reference to the claim

11  that the indictment violates Mr. O'Donnell's First Amendment

12  rights.  I believe that matter or those issues have been for

13  the most part addressed in the U.S. Supreme Court's opinion in

14  *Buckley*, 424 U.S. 1, and also the Third Circuit's opinion in

15  *Mariane* (phonetic).  However, I understand counsel preserving

16  those matters for appeal.

17          In reference to the claims made in count three, you

18  can use your time to address that if you so choose, but I

19  believe that the issues have been thoroughly briefed in the

20  pleadings.  And again, the Court is more interested with regard

21  to counts one and two.

22          Just to provide some backdrop for purposes of the

23  hearing for any appellate review, the indictment alleges that

24  Mr. O'Donnell, in a UCC, unindicted co-conspirator, solicited

25  employees from Mr. O'Donnell's law firm to contribute to the

1    Edwards for president political committee or campaign.  Edwards

2    is not identified in the indictment but it's pretty obvious

3    it's Edwards for president.  And then later reimbursed

4    employees for their contributions.

5         I think the indictment makes clear that all of the

6    individuals solicited by Mr. O'Donnell and/or the unindicted

7    co-conspirator acting on behalf of Mr. O'Donnell used their

8    true names to make the contributions.

9         And then based on the allegations, Mr. O'Donnell was

10   indicted for conspiring to make illegal campaign contributions

11   in violation of Title 18, U.S.C. 371 and 2 U.S.C. 441(f).

12   That's counts one and two that allege violations of 441(f).

13   And count three is knowingly causing the Edwards' campaign

14   treasurer to make materially false statements in violation of

15   Title 18, U.S.C. 1001.

16        So the question that has been presented I think

17   squarely in the pleadings is whether 441(f) prohibits the

18   conduct referenced or charged in the indictment.  And the

19   defendant, Mr. O'Donnell, argues that 441(f) prohibits only the

20   act of making a contribution and providing a false name -- In

21   other words, a direct contribution -- and not asking others to

22   make contributions in their true names and reimbursing them for

23   that contribution.  This appears to be a case of first

24   impressions.

25        Let me -- let's focus on the rationale of the act

1   itself.  The rationale of the act has been discussed, and the

2   act is -- By 'the act', I mean the Fair Election Campaign Act.

3   The rationale of the act has been discussed in a number of

4   cases.  The Court is obviously interested primarily in Ninth

5   Circuit authority and U.S. Supreme Court authority.  But Judge

6   Fletcher in *Goland versus U.S.* at 903 Fed.2d 1247, discuss and

7   mention and reference the act, the rationale of the act.  And

8   he relied on U.S. Supreme Court authority.  He identified the

9   rationale of the act to provide the electorate with information

10  as to where campaign money comes from to aid voters in

11  evaluating those who seek office and to deter corruption.

12          So my question is to counsel for Mr. O'Donnell, and

13  again, this is a narrow focus, and the focus is the rationality

14  of the act.  But assuming that deterrence of corruption is one

15  of the primary motivating factors for Congress to enact the

16  statute, doesn't it logically follow that 441(f) would include

17  both direct and indirect contributions?

18          **MR. TERWILLIGER:**  May I go to the podium, your Honor?

19          **THE COURT:**  Yeah, please.

20          **MR. TERWILLIGER:**  Thank you.

21          **THE COURT:**  You haven't recently been in Judge Real's

22  courtroom; it's lectern?

23          **MR. TERWILLIGER:**  No, I haven't.

24          **THE COURT:**  Okay.

25          **MR. TERWILLIGER:**  I've spent enough time in this

1    courthouse pleasurably --

2            **THE COURT:**  I think Mr. O'Donnell probably has.

3            **DEFENDANT O'DONNELL:**  Yes.

4            **MR. TERWILLIGER:**  Your Honor, first of all, thank you

5    for the privilege of appearing in your court in this matter,

6    and thank you for what is obviously the time and attention you

7    have given to this to arrive at this question.  And I think in

8    certain respects, you have sort of driven to the heart of the

9    matter immediately.

10           And I think as a general proposition, there would be

11   little disagreement in any corridor that Judge Fletcher's

12   articulation of the over-arching purposes of the act are

13   accurate.  But there's a corollary principle at work that is

14   equally important to the resolution of this motion, and that is

15   that when Congress does act to, in essence, regulate protected

16   First Amendment activity, it has to do so in a very carefully

17   crafted way.

18           I think the terms the courts have used is carefully

19   calibrated, sharp distinctions, and importantly deliberate

20   draftsmanship in terms of both how the statute is structured

21   overall and how specific provisions not only are drafted but

22   how they work together.  And that's really where the issue in

23   this case becomes joined.

24           And I think I can answer the Court's question about

25   it covering corruption in the negative here actually quite

1    easily.  The government takes the position and they indicted

2    this case on the basis that 441(f) prohibits conduit

3    contributions.  The fact of the matter is, it doesn't.  And the

4    way to very simply understand that is to consider the

5    difference between 441(f) and 441.  Four forty one, as your

6    Honor may have known but I'm sure knows now, is that section of

7    the statute that establishes aggregate campaign contribution

8    limits.

9           Four forty one (f) is an absolute ban.  Congress has

10   elected to ban certain First Amendment conduct; that is, making

11   a campaign contribution in the name of another person.  That's

12   an outright ban, whether you give a dollar or you give a

13   thousand dollars.

14          **THE COURT:**  The reason for the ban?

15          **MR. TERWILLIGER:**  The reason for the ban, your Honor,

16   is the very purpose that your Honor articulated in terms of

17   Judge Fletcher; so that the public will know where money is

18   coming from when someone makes a contribution.  Congress did

19   not elect, however, to ban conduit contributions, and that's

20   what 441 is about.

21          I could, or Mr. O'Donnell for that matter could, give

22   20 people a hundred dollars each and say 'I want you to donate

23   this money to Edwards for president'.  That's why I'm giving it

24   to you.  And there are often good political reasons to try to

25   spread that money around.  That's not illegal under the statute

1    for him to do that.  It would only become illegal if two things

2    -- one of two things happened.  Either --

3              THE COURT:  I'm sorry, I want us -- This is a very

4    focused, narrow question, and it has to do with the rationale.

5    And I understand that there's other parts to the defendant's

6    argument concerning statutory construction and the rules that

7    apply.

8              MR. TERWILLIGER:  Your Honor, this isn't statutory

9    construction.  This is the rationale.  The rationale of

10   Congress in enacting these two parts of the statute separately

11   is to allow conduit contributions to be made.  Many political

12   organizations collect and move contributions on.  To do that,

13   you simply have -- To do it legally, you simply have to do two

14   things: Not exceed the aggregate contribution limit.  So if Mr.

15   O'Donnell gave more than two thousand dollars to a number of

16   people, that would arguably violate 441(a).  And number two,

17   the people who actually tender those contributions have to --

18             THE COURT:  Well, let's -- let me stop you.

19             MR. TERWILLIGER:  -- supply his name.

20             THE COURT:  If one of -- I guess there's several

21   reasons behind the enactment of the statute, but if one is to

22   provide the electorate with information as to where campaign

23   money comes from, a conduit contribution does not do that.

24             MR. TERWILLIGER:  Yes, it does, your Honor, if the

25   law is complied with.  Under 441(a), the conduit, the person

1    who actually tenders the money to the committee, has a legal

2    obligation to report the name of the person who gave them the

3    money if they're not the original source of it.  This is

4    spelled out in our papers.

5          But that's how the statute works in terms of conduit

6    contributions, and that's how the corruption of not knowing or

7    having someone behind a contribution is covered.

8          There's a second reason for that as well.  There are

9    some people whom Congress has elected to prohibit from making

10   donations: people or organizations; foreign nationals,

11   corporations, labor organizations and so forth.  So the

12   rationale behind the requirement to report the original source

13   if the person who gives it is not the original source is

14   exactly the rationale of the statute.

15         But equally as important if you look at the other

16   side of that coin, your Honor, is the statute is recognizing

17   that there are circumstances where the person who actually

18   tenders the contribution will not in fact be the original

19   source of the money that's being provided.

20         **THE COURT:**  Now, let's move to *Goland*, and I know you

21   addressed some of this in your reply brief.  In *Goland*, Mr.

22   Goland engaged in behavior that's similar to the conduct that

23   was engaged in by Mr. O'Donnell.  He solicited several

24   individuals to contribute to I guess a media company to provide

25   an advertisement in favor of a candidate --

1          **MR. TERWILLIGER:**  Yes.

2          **THE COURT:**  -- with the intent of not disclosing his

3     identity.  In reference to that conduct, again, Judge Fletcher,

4     in particular in reference to Title 2, U.S.C. 441(f), the

5     reference says that the act prohibits the use of conduits to

6     circumvent these restrictions, and then cites the statute in

7     question.  So at least Judge Fletcher, in the context of

8     *Goland*, which is different than some of the issues presented

9     here, references or makes reference to the fact that conduit

10    contributions are restricted or prohibited.

11         **MR. TERWILLIGER:**  Yes, your Honor.  There are three

12    cases, as you know, that the government has cited where this

13    scenario or something like it or mentioned; *Goland* being the

14    Ninth Circuit case, *Sun Diamond* in the D.C. Circuit, and

15    *Mariane* (phonetic).

16         **THE COURT:**  Yeah, I'm primarily concerned with Ninth

17    Circuit.

18         **MR. TERWILLIGER:**  In *Goland*, your Honor, first of

19    all, that decision was a civil suit challenging the

20    constitutionality.  So the application of 441(f) to conduit

21    contributions was assumed for purposes of the issue that was

22    joined -- the constitutional issue that was joined in the civil

23    suit.  It was not decided in that case, and it's never been

24    decided by any court, including the Third Circuit in *Mariane*.

25         So we could call it *dicta* I suppose, but really what

1    it's become in this limited amount of jurisprudence is

2    jurisprudential conventional wisdom.  But it's not been

3    decided.

4              And respectfully, your Honor, I would submit

5    respectfully to the government's position, what this really

6    boils down to is looking at the text of the statute.  If you

7    look at the text of the statute, it doesn't say anything about

8    the conduct that's alleged in the indictment.  The government

9    resorts to statutory construction to try to get there, which,

10   you know, is a good try, but really, Judge, they're inviting

11   you to make error in order to preserve the way they chose to

12   indict this case.

13             **THE COURT:**  And sometimes, whether I make error or

14   not is dependent on the panel.

15             **(Laughter)**

16             **MR. TERWILLIGER:**  I suppose, your Honor.

17             **THE COURT:**  I learned that -- I'm not here to do what

18   I think the circuit in this particular case, because there's no

19   direct decisional authority on point, would want me to do.  I'm

20   here to try to figure out the issue and try to get it right.

21             **MR. TERWILLIGER:**  And we of course assume that, your

22   Honor.  And we also recognize -- I mean, I was a prosecutor for

23   15 years.  We recognize that it is the rare case when an

24   indictment should be dismissed pretrial without a trial on the

25   merits.  But I would respectfully submit, your Honor, this is

1    that case because, you know, I've done the same thing for 30

2    years, Judge: Take a yellow pad, line up the elements of the

3    offense and line up the evidence next to it.  And when you do

4    that in this case, they don't match.

5         **THE COURT:**  I had a case yesterday involving another

6    defendant, Mr. Francis, and during the course of that

7    litigation the lawyers told me almost the same argument: This

8    is that case.

9         **MR. TERWILLIGER:**  Well, I don't know that case, your

10   Honor, but I've never filed a motion to dismiss an indictment

11   before in my life and I've defended plenty of them.  But this

12   case is indeed different.  And the government had alternatives

13   in terms of how they could charge this case.

14        I mean, arguably, you know, I'm not making any

15   admissions, but arguably, for the sake of discussion, if Mr.

16   O'Donnell gave a number of people more than two thousand

17   dollars and there's evidence that those were his contributions

18   as opposed to their contributions, then arguably he violated

19   the campaign contribution limit.  But he didn't make a donation

20   in the name of another.

21        Another reason to look at the rationale of the

22   statute that way, your Honor, is simply this: When the

23   contribution was completed, if Mr. O'Donnell had never

24   reimbursed anyone, suppose he had promised to and then reneged

25   on the promise; the contribution still would have been made,

1    and it would have been made in the true names of the people who

2    made it.  It wouldn't have been his contribution by any stretch

3    at that point.  They're separate occurrences, separate

4    financial transactions.

5           Indeed, your Honor, if you look at the definition of

6    'expenditure' in the statute, what Mr. O'Donnell did here,

7    every inch fits the definition of expenditure as well as it

8    fits the definition of a contribution.

9           The definition of an expenditure in 431(9) is a

10   'purchase payment, distribution, loan, advance, deposit or gift

11   of any money or anything of value made by any person for the

12   purpose of influencing any election for federal office, and

13   includes a written contract, promise or agreement to make such

14   an expenditure.'  So it's as much an expenditure under the

15   statute as it is a contribution, thus introducing further

16   ambiguity into the way the government would construct the

17   statute.

18           **THE COURT:**  Thank you.  Does counsel have any -- Do

19   you wish to respond to any of the arguments --

20           **MR. TERWILLIGER:**  Thank you, your Honor.

21           **THE COURT:**  -- that have been made so far?

22           **MR. MITCHELL:**  Yes, your Honor.

23           **THE COURT:**  Would you do that at the lectern?

24           **MR. MITCHELL:**  Thank you, your Honor.

25           **THE COURT:**  And again, just to focus on the arguments

1    so far.

2             **MR. MITCHELL:**  Thank you, your Honor.

3             In reviewing some of the pleadings last night and

4    actually being on Westlaw, I learned something knew, which I

5    wish I had been able to put into the briefs earlier, and that

6    is the rationale behind the 1971 act is that it was really the

7    focus there was identity as well as money that the candidates

8    would be spending.  But, the 1971 act did not impose a limit on

9    individual contributions.

10            So ironically, back in 19 -- right after this act was

11   passed, back in 1972, if Mr. O'Donnell had simply taken out his

12   checkbook and written out a check for 40 or $50,000, I don't

13   believe the act would have prohibited that.  But what it would

14   prohibit was his doing what he did in this case.  He, by using

15   the conduits, by making contributions in the name of another,

16   he violated what the act was trying to prohibit back then,

17   which was letting the electorate know who is behind somebody's

18   candidacy; who are the people who are contributing.  Not -- In

19   other words, how much are people giving and who is it?  It was

20   all about disclosure.

21            And what I found, your Honor, last night because the

22   contribution limits didn't come into play until a few years

23   later, in 1974.  That's when you had the Fair Election Campaign

24   Act amendments, and that's when contribution limits for the

25   first time were being imposed.  But they weren't in there, I

16

1    believe, back in 1971.

2              And what's interesting is, there's a Senate report,

3    number 92-229, that I found last night; it's dated June 21st --

4              **THE COURT:**  Do you have that report for the Court?

5              **MR. MITCHELL:**  I do here, and I could give this copy

6    -- I should have made a few more copies.

7              **THE COURT:**  We'll take it.

8              **MR. MITCHELL:**  Let me just look at it carefully so I

9    paraphrase it accurately.

10             **THE COURT:**  Would you show it to counsel for Mr.

11   O'Donnell?

12             **MR. MITCHELL:**  Certainly.

13             And by the way, the title part at the top I wrote in,

14   but the text of what the committee is saying, that I took off

15   Westlaw.

16             **THE COURT:**  I may be more interested in your

17   marginalia.

18       **(Laughter)**

19             **MR. MITCHELL:**  It's just the title of it, and the

20   date.

21             **THE COURT:**  Okay.

22             **MR. MITCHELL:**  But what's in there is interesting.

23             **MR. TERWILLIGER:**  I assume I'll get it.

24             **THE COURT:**  We will make a copy.  I'll have the Clerk

25   make a copy.

1          Why don't we take a minute for the Clerk to do that

2     and then you can continue your argument.

3               **MR. MITCHELL:**  Thank you, your Honor.

4          **(Pause)**

5               **THE COURT:**  Please.

6               **MR. MITCHELL:**  Thank you, your Honor.

7               What this shows is limitations were not being imposed

8     back then, but the rationale -- it appears that part of the

9     rationale behind rejecting this concept of having a

10    contribution limit was, it's not going to be necessary as long

11    as the electorate is going to be informed.  With these

12    disclosure provisions, one will know, the voter when he goes to

13    the voting booth, will have the opportunity to know who

14    contributed to this candidate.

15              And so it was identity that was a primary focus back

16    then, as well as, I believe, that the 1971 act also imposed

17    limits on expenditures being made by a candidate.  But again,

18    it didn't impose limits on what an individual could contribute

19    to a candidate.  That didn't happen till a few years later.

20    And then despite some of the thoughts expressed in this report

21    about the contribution limits being unconstitutional, the

22    Supreme Court later, in 1976, upheld that in *Buckley versus*

23    *Vallejo* (phonetic).  So the statute that we're dealing with

24    actually came into effect before there were contribution

25    limits.

1          Now, Mr. O'Donnell's motive, most likely, in doing

2    what he did was to evade the personal contribution limits, but

3    at the same time, he's violating the purpose of Section 441 of

4    -- 441 ended up serving really two purposes.  One, its whole

5    design was: Who's the one making the contribution?  And when

6    Mr. O'Donnell engages in the acts of having people solicited to

7    make a contribution on the promise that he would advance or

8    reimburse the money -- either one is sufficient -- he's

9    violating 441(f) for the very -- and he's violating the motive

10   behind that statute I believe in the first place, which is

11   identity disclosure.  So he's already violated that.

12         Chances are his motive was really dual.  That may

13   have been part of it.  But his primary one was probably getting

14   around those individual limits because he knew 'I can't

15   contribute more than two thousand I already have.  I've got to

16   raise 50,000 so I'm going to have these other people do it and

17   pay them to do it.'  That violates 441(f).  It also obviously

18   is evading the purpose of the individual limits as well.

19         But clearly the wording in the statute expressly

20   encompasses the conduct he engaged in, it logically encompasses

21   it.  And since that time, courts have had no problem, you know,

22   recognizing -- Granted, was it the central issue in the *Goland*

23   case?  Arguably, no, but the Court didn't seem to have a

24   problem recognizing that 441(f) does indeed prohibit this kind

25   of conduct.  And you have a couple of other opinions doing the

1    same thing.

2            And interestingly enough, later on in 2002, when you

3    have the Bipartisan Campaign Reform Act, I think commonly known

4    I think as McCain-Feingold, they increased the penalties for

5    this provision.  They made it easier to get felony liability.

6    Instead of violating the individual contribution limits to the

7    sum of 25,000 or more and then being liable for a felony, for

8    this provision back in 2002, they decreased the felony limit

9    down to as long as you gave more than ten thousand.

10           And when the -- And I think I cited the report, the

11   title of that report in our papers, which was: Increase in

12   penalties for violation of conduit contribution ban.  Congress

13   was recognizing back then that this statute is going to

14   prohibit one -- is going to impose criminal liability for one

15   who's doing it to evade the personal limits.  And at that point

16   they're recognizing that this is prohibiting conduit

17   contributions as well.

18           But from the get-go, Mr. O'Donnell got himself in

19   trouble by doing what he did, because it was violating -- the

20   original purpose was identity disclosure and he violated that

21   by engaging in these conduit contributions.

22           **THE COURT:**  So you would close your argument with the

23   offer that the defendant, or Mr. O'Donnell, will be inviting

24   the Court to make error if I rule in favor of Mr. O'Donnell?

25           **MR. MITCHELL:**  Yes.

1          **THE COURT:**  Okay.  I thought that was coming.

2          Let me -- Let's go to -- before you leave, let's look

3     at certain parts of the act itself.  It's the government's

4     position that 441(f) clearly prohibits indirect contributions.

5     That's true?

6          **MR. MITCHELL:**  Yes.  And just to be clear, by

7     indirect contribution, I interpret that to mean making a

8     contribution in the name of another.  In other words, paying

9     someone to make the contribution in that person's name.  That

10    would be a violation, yes.

11         **THE COURT:**  Prohibits the conduct engaged in or

12    allegedly engaged in by Mr. O'Donnell?

13         **MR. MITCHELL:**  Yes, your Honor.

14         **THE COURT:**  If we look at Section 441(a), which

15    places limitations on contributions.

16         **MR. MITCHELL:**  Yes, sir.

17         **THE COURT:**  Section 441(a) provides as follows.  It

18    states: For purposes of the limitations imposed by this

19    section, all contributions made by a person, either directly or

20    indirectly, on behalf of a particular candidate, and I'm not

21    going to read all the language here, but it appears that 441(a)

22    allows for indirect contributions as long as they do not exceed

23    certain limits.  And, assuming that's the case, it would appear

24    that your reading of 441(f) prohibiting indirect contributions

25    conflicts with the provisions of 441(a), which allows for

1    indirect conduit contributions or conduit contributions, and

2    it's seemingly irreconcilable.

3          So, how do you explain the two?

4          **MR. MITCHELL:**  Well, first of all, I think there's a

5    limit on how much you could do under 441(a).

6          **THE COURT:**  Yes, there is.  Four four one (a) -- Do

7    you have the statute in front of you?  Four four one (a) places

8    limits on contributions, but if you read 441(a)(8), it

9    seemingly allows for indirect contributions to a particular

10   candidate as long as they don't exceed certain limits, the

11   point being that 441(a) is seemingly inconsistent with your

12   reading of 441(f).  You can't say indirect contributions are

13   prohibited under (f) and then 441(a) seems to allow it.

14         And the question is: How do you reconcile the two

15   parts?

16         **MR. MITCHELL:**  Well, I think that the -- With the

17   definition that's being referred to about the indirect

18   contributions, it's required that that be reported.  And I

19   think that statute came in later, and it deals with the

20   reporting requirements in order to see whether or not an

21   individual has met or exceeded the individual contribution

22   limit.

23         And with respect to -- It's something that's required

24   to be reported.  And then, if you are doing that, under 441(f)

25   you're running the risk of criminal liability if you're doing

1    it over a certain amount.  But I think -- And I do see the

2    ambiguity that the Court's pointing to is that in one sense

3    it's saying you have to report this.  If you have to report it,

4    then why is it something that 441(f) prohibits?

5              **THE COURT:**  Yes, precisely.

6              **MR. MITCHELL:**  And I see that point.  And I think it

7    may be that there is an ambiguity in terms that the reporting

8    requirement is very specific.  It's trying to get at who's

9    making a direct contribution and who's doing it indirectly?  It

10   has to be reported.  Now, whether or not that's going to be

11   legal or not is going to be determined by other statute.

12             For instance, if you're going to do that, over two

13   thousand dollars worth to an individual, or if you're going to

14   do it over ten thousand, you're going to risk criminal

15   liability because you're violating 441(f).

16             And the statute, the 441(a), I think that's (a)(1)(8)

17   that the Court's pointing to?

18             **THE COURT:**  Yes.

19             **MR. MITCHELL:**  Yes.  That's a statutory definition

20   putting requirements on contributors to report exactly who's

21   paying this money.  And so it's trying to get at who is making

22   a conduit contribution.  That doesn't say there won't be some

23   sanction for it as well, but you better report it on one hand.

24   And secondly, if you are doing this and you're doing this over

25   a certain amount, at the very least, if it's over two thousand

1   dollars, I think you're going to risk misdemeanor liability.

2   If you do it over ten thousand dollars, you're going to be in

3   felony land.

4          And I think that's the -- And I do see that there is,

5   you know, some ambiguity there because, as the Court has

6   realized, but at the same time, what Mr. O'Donnell has done and

7   as alleged in the indictment is clearly a violation of 441(f).

8   It is -- It can be interpreted as being an indirect

9   contribution.  It wasn't reported; it was held back, it was

10  concealed.  And so in a sense this definitional requirement,

11  this reporting requirement set forth in 441(a)(1)(8) was

12  violated because it wasn't reported.  And of course, from the

13  get-go, Mr. O'Donnell is in violation of 441(f).

14         But I think the purpose of 441(a)(1)(8) was these are

15  the things that you're going to have to report because these

16  are the things we're going to look at to determine if you have

17  exceeded your individual contribution limit, because all these

18  things are going to count against you.  And it doesn't

19  exonerate or say this is going to be allowable; we want to know

20  about it.  Now that's the purpose behind it.  It's really --

21  They're serving -- It's a different purpose.

22         THE COURT:  But you recognize the ambiguity, or,

23  arguably, consistency?

24         MR. MITCHELL:  Chances are it would have been better

25  to throw another sentence in there, 'and beware of whatever',

 1   but I think because it's serving a different purpose, I don't

 2   think they're irreconcilable.  I think you can consistently

 3   hold that he was required to report these things in terms of

 4   satisfying his individual contribution limit, and that was

 5   required because of 441(a)(1)(8), and at the same time, he's

 6   violated 441(f).

 7           **THE COURT:**  But if I'm a person who is interested in

 8   making sure I do not violate the campaign laws making

 9   contributions to candidates, unfortunately we can't contribute

10   to any campaign, but if I read 441(f) and read 441(a), it

11   appears that I can make an indirect campaign contribution as

12   long as it's within certain limits.  At least it suggests that.

13           **MR. MITCHELL:**  If it was disclosed.  I think if you

14   disclosed it you might not run into trouble, because, again,

15   there's no penalty -- I mean, there's no criminal sanction --

16   for 441(f) until you reach over two thousand dollars, or it may

17   be 2,300 now because that's the individual limit now, or over

18   ten thousand for felony status.

19           **THE COURT:**  The statute reads: The conduit shall

20   report the original source and the intended recipient of such

21   contribution to the commission and to the intended recipient.

22           **MR. MITCHELL:**  That has to be disclosed.

23           **THE COURT:**  Let me inquire as to the portion of the

24   statute regulating contributions by foreign nationals.  One of

25   the rules of statutory construction is that if a particular

1  language is used in one section of a statute but is omitted in

2  another section of the same act, the courts are to presume that

3  Congress acted intentionally and purposefully and it wasn't

4  simply an oversight or a mistake.

5       So we have the section of the statute that prohibits

6  -- that regulates contributions by foreign nationals, and it

7  reads: A foreign national shall not direct, dictate, control or

8  directly or indirectly participate in the decision-making

9  process of any person.  And it goes on to make reference to

10  contributions or expenditures in connection with any local,

11  state or federal office.

12       Why was it necessary for Congress to use the word

13  'indirectly participate' -- the term 'directly or indirectly

14  participate' if it was understood under 441(f), as you read it,

15  that indirect contributions are prohibited?

16       **MR. MITCHELL:**  I think, your Honor, when that statute

17  -- I believe that statute comes in later when there are already

18  contribution limits, and I think the focus then is: How are

19  contribution limits going to be reported?  How are we going to

20  make sure that they're being complied with?  Whereas the

21  purpose behind the 1971 act, 441(f), of which 441(f) was a

22  part, was identity.  It was seeking to make sure that if

23  someone was making a contribution in the name of another, we

24  had to know about it so that a person voting at the polls would

25  know who's backing this candidate.

1           Later on, when you had the contribution limits

2    imposed, Congress became more detailed and I think more focused

3    on: How are we going to detect whether or not these limits are

4    being violated?  And obviously gave a more precise definition

5    as to the prohibited conduct later on when you had contribution

6    limits.

7           **THE COURT:**  But part of the role of statutory

8    construction is for the Court to look at the entire act to

9    figure out the intent of Congress, and there are certain rules

10   that apply.  Here we have certain parts of the act making

11   reference to conduits and indirect contributions and 441(f)

12   referencing, not using the term 'conduit' or 'indirect

13   contribution'.  And under the rules of statutory construction,

14   it's presumed or assumed that Congress did not intend that

15   portion of the act to apply to indirect contributions.

16          **MR. MITCHELL:**  I don't think they're necessarily

17   inconsistent though, your Honor.  It may be that the violation

18   to the prohibition on the foreign nationals has more detail in

19   it in terms of what's being prohibited, but I don't think that

20   creates an inconsistency with 441(f)'s prohibition to start

21   with.

22          **THE COURT:**  Why was it necessary to use the words

23   'indirect' or 'conduit' in other parts of the act if it's

24   already prohibited under 441(f), as you read the statute?

25          **MR. MITCHELL:**  I don't have an answer for that, your

1    Honor.

2            **THE COURT:**  There's no answer.

3            **MR. MITCHELL:**  They may have been more careful as

4    they were doing it later.  But it appears it's still in -- I

5    mean you still have the prohibition of 441(f), which, despite

6    this later passage of the 441(e) prohibition for foreign

7    nationals, it certainly doesn't create any kind of a grievous

8    ambiguity or in some way renders 441(f) liable to -- subject to

9    a reasonable interpretation of 'Oh, I can go ahead and do this

10   because 441(e) used -- you know, it was more precise in its

11   definition about what was prohibited', and yet that doesn't

12   show up here.

13           Four four one (f) has very clear, simple language.

14   You can't be paying for contributions that are going to be made

15   in the name of another person.  And that --

16           **THE COURT:**  But you're asking the Court to interpret

17   that portion of the act separate and apart from the rest of the

18   act, and that's -- the Court is required to look at the act in

19   its entirety and apply rules of statutory construction.  And

20   that's what I'm required to do.  If we apply the rules of

21   statutory construction here and not look at the legislative

22   history or some of the opinion letters you've offered, you

23   lose.

24           **MR. MITCHELL:**  But I don't think, your Honor, that

25   441(e) is in some way contradicting 441(f) in any way.  It's

1    just being more precise in terms of the prohibited conduct.  It

2    doesn't in some way render 441(f) a nullity or legitimize

3    certain conduct that the defendant is trying to argue for.  It

4    doesn't do that at all.  It may be that it's more precise and

5    one could argue, well, maybe that's not even necessary given

6    that you have 441(f) already, but it doesn't rise to the level

7    of contradicting or creating some kind of a grievous ambiguity.

8    It doesn't come close to doing that.

9            THE COURT:  Maybe I'm not stating the issue clearly.

10           The portion of the act applying to foreign nationals

11   uses the terms 'directly or indirectly participate or

12   contribute.'  Four four one (f) doesn't.  Under the rules of

13   statutory construction, we assume that when Congress didn't use

14   the term 'conduit' or 'indirect', they did that intentionally,

15   purposefully.  In other words, they didn't not want it to apply

16   to indirect contributions.  Arguably, that's the claim that is

17   being made here.

18           MR. MITCHELL:  The purpose -- I think what we're

19   dealing with is the purpose behind 441(f) at the time it was

20   enacted was identity, and it wasn't dealing -- focusing so much

21   on -- it was focusing on the identity of those making the

22   contribution, whereas later the focus was, or an additional

23   focus became contribution limits and how those are going to be

24   defined.

25           THE COURT:  So it seems to me that what you're asking

1    the Court to do, and maybe it's proper, but what you're asking

2    the Court to do is to focus -- primarily focus on the (f)

3    section of the act, looking at Mr. O'Donnell's alleged conduct,

4    his alleged conduct seems to violate the (f) section of the

5    act, the court should, in the analysis and not look at the

6    other portions or, if the Court considers the other portions,

7    they're not necessarily inconsistent with your interpretation

8    of (f)?

9          MR. MITCHELL:  That's correct, your Honor.  I don't

10   believe that 441(e) does that with its more precise language in

11   terms of how contributions are going to be defined for purposes

12   of whether a foreign national violated it.

13         THE COURT:  Now, assuming for *arguendo* that we do the

14   analysis, we look at all the various portions and there's

15   inconsistency, at least in one instance it may be even

16   irreconcilable to interpretation, doesn't that lead us to the

17   rule of lenity?

18         MR. MITCHELL:  No, because we don't have a grievous

19   ambiguity here.  First of all, the interpretation that the

20   government has offered is clearly the most logical and

21   plausible.  And even to the extent that the defense may suggest

22   a plausible interpretation --

23         THE COURT:  Well, what would --

24         MR. MITCHELL:  -- that wouldn't call for the

25   enactment -- that wouldn't call for application of the rule of

```
 1    lenity.  We're not dealing with an egregious ambiguity here,

 2    your Honor.  We're dealing with --

 3            THE COURT:  Well, I would think they would describe

 4    it as a grievous ambiguity.  But you can see that it's

 5    ambiguous, but it doesn't rise to the level of grievous

 6    ambiguity.

 7            MR. MITCHELL:  I see that 441(e) used some language

 8    at the point where there are contribution limits.  It's almost

 9    the same argument that the defense makes with respect to this

10    way that the 441(a) statute is going to be enforced, because

11    you have that requirement of what's going to get reported, and

12    there you have the indirect language, the express language of

13    conduits.  And that's all being used to police, to make sure

14    that what's going to get reported as far as contribution

15    limits, these things get reported so we can determine whether

16    somebody has exceeded the limit.

17            THE COURT:  It would seem that when Congress enacted

18    the statute, and for good reason, everyone knew that teams of

19    lawyers would be sparring over the words to look for ways to do

20    or make contributions legally.  And what Congress could have

21    easily done here is simply used the word 'indirect or conduit

22    contributions are prohibited also' and clearly end of

23    discussion.  They didn't do it here.  They used those words in

24    other parts of the statute, and I'm a bit at a loss.

25            MR. MITCHELL:  Well, you also have Congress'
```

1    recognition in the committee report recognizing that 441(f),

2    that they were increasing the penalties for the ban on conduit

3    contributions.  I mean, by 2002 they realized that the statute

4    serves that purpose, and they're recognizing it.  The original

5    purpose of course was identity, and that was violated -- Mr.

6    O'Donnell violated that goal behind the statute.  He went

7    against that by going around this identity requirement and

8    having other people make these contributions and paying for

9    them.

10           And ironically, his motive when he did it may have

11   been more addressed at getting around the later-enacted

12   provision, which was 441(a), that set forth a contribution

13   limit, because if he didn't have that limit on him, he could

14   have just written a check.  But he knew he couldn't do that,

15   and so that may have been his primary motivation.  And yet by

16   doing what he did, he violated 441(f) for the other reason,

17   which was: He didn't disclose; his identity was kept secret

18   that he's the money behind all these various contributions that

19   were received by the campaign.  And that was something that was

20   outlawed back in 1971.

21           **THE COURT:**  Thank you.

22           **MR. MITCHELL:**  Thank you.

23           **THE COURT:**  Thank you for your argument.

24           **MR. TERWILLIGER:**  May I respond just briefly --

25           **THE COURT:**  Yes.

1          **MR. TERWILLIGER:**  -- to a couple of points, your

2    Honor?

3          **THE COURT:**  Yes.

4          **MR. TERWILLIGER:**  Thank you.

5          I'm not, your Honor, going to reargue points that are

6    made in the brief or further answer the questions the Court's

7    already asked unless you ask me to.  But I do think there are a

8    couple of points worth making in response to some of the things

9    that really, quite surprisingly, the government said.

10          First of all, in terms of this Senate report which

11    we've never seen before, I don't know what the context of that

12    is.  It's -- pardon me.  It's obviously from a time when

13    Richard Kleindeinst (phonetic) was the attorney general and the

14    act was amended in the early seventies.  This act has gone

15    through a number of iterations, as the Court knows, since then.

16    So what the act was in 1971 or what Congress thought it was in

17    1971, that's not the Congress that enacted the law that your

18    Honor is being asked to apply here today, so I respectfully

19    submit that it's largely irrelevant.

20          On pages 16 and 17 of our motion to dismiss, however,

21    what seems to have come as a revelation to Mr. Mitchell might

22    have been discovered a little earlier.  We point out that

23    Section 441(f) was originally enacted as part of the act of

24    1971, and that it did not impose general contribution limits,

25    but the act did impose contribution limits from candidates'

1    personal funds and relatives.

2           And we point out that Senator Hugh Scott, who was one

3    of the prime authors of this, said that: A man of influence

4    could easily effect a great evasion of the contribution limits

5    by having friends make contributions equivalent to the funds

6    they received from the candidate.  And raising this concern

7    suggests that Senator Scott at least did not believe that

8    Section 44f(f), as it was construed then, prohibited anything

9    like the government suggests that it did then and that they

10   apparently persist that it does now.  So I don't think what Mr.

11   Mitchell brought to the Court's attention is very relevant.

12          He also said something that I think on reflection

13   he'll recognize is an error and reflects a fundamental

14   misapprehension of how the portions of this statute that your

15   Honor was asking about were.  He said that if Mr. O'Donnell

16   were to arrange these contributions the way he's alleged to

17   have done and went over the two thousand dollar limit, he would

18   violate 441(f).  Well, that's simply not right.  That's not

19   what he would violate.  He would violate the aggregate campaign

20   contribution limits of 441(a), which underscores the very

21   difference that your Honor is talking about between these two

22   statutes.

23          Just a moment, your Honor.

24       **(Pause)**

25       **MR. TERWILLIGER:**  What this boils down to, your

1    Honor, is that in order to rule for the government, the Court

2    would in fact have to take that section of the statute that

3    defines contributions as direct or indirect and apply it to

4    441(f), which it plainly does not.

5         And when I say 'inviting error', and I appreciate the

6    Court making light of that, but when the government says to a

7    court, any court, that a defendant can be validly indicted and

8    convicted because he essentially or basically, as their papers

9    do, engaged in the conduct which makes out the elements of an

10   offense under this statute, I would think that would give any

11   court pause about the government's understanding of the statute

12   at issue and the function of an indictment as it's been defined

13   in this circuit and others.

14        And again, your Honor, I thank you for the attention

15   and the obvious effort you've put into this.  I respectfully

16   submit that this is that case where this indictment has to be

17   dismissed.

18        **THE COURT:**  Thank you.

19        **MR. TERWILLIGER:**  Thank you, your Honor.

20        **THE COURT:**  Does the government have any final

21   comment?

22        **MR. MITCHELL:**  Yes.  Just a minute, your Honor.

23        **THE COURT:**  Just a response to the last argument.

24        **MR. MITCHELL:**  Yes, your Honor.  I believe that when

25   Senator Scott was on the floor, I think, if we were to go back,

35

1    and I would like to see the record, the actual words used,

2    because I think he's referring to expenditures being made by

3    candidates; it wasn't dealing with contributions.  He was

4    talking about how a candidate might get around an expenditure

5    limitation and he might use his friends to do that.

6           **THE COURT:**  I'm not really enthusiastic about having

7    to rely on a senator's statement on Congressional floors to

8    determine the meaning of the words here.

9           **MR. MITCHELL:**  I appreciate that, your Honor.

10          **THE COURT:**  (indiscernible)

11      **(Voices overlap)**

12          **MR. MITCHELL:**  Well then, finally, your Honor, I just

13   want to point out that the definition of contribution in 431(8)

14   is much broader.  That's the definition of contribution that

15   applies to 441(f).  And that definition includes anything of

16   value.  So that when Mr. O'Donnell provides money to these

17   conduits to make these contributions, he is making a

18   contribution as defined under the code, and he's doing that in

19   the name of another because it's those peoples' names -- it's

20   in those peoples' name in whose name the contribution is

21   reported.  That is a clear violation of 441(f).  It isn't

22   essentially doing it or basically doing it -- I mean, it is --

23   but it's doing it.  It constitutes that violation.  This is not

24   a case, your Honor, where the indictment should be dismissed.

25          **THE COURT:**  Thank you.  Thank you very much.

1      **THE COURT:**  I think we have a housekeeping matter in

2  terms of a trial date?

3      **MR. MITCHELL:**  Yes, your Honor.  We are currently set

4  for -- I think a stipulation is being lodged.  Mr. Middleton

5  was preparing that one.

6      **MR. O'NEILL:**  On July 7, your Honor, we had

7  stipulated to a continuance because we got -- there was a last

8  minute deluge of back and forth discovery which we believe

9  would enable the Court more expeditiously to try the case.

10  We've worked on it; we've checked with Mr. Cruz, and he

11  suggested it would be an open date and not an inconvenience to

12  the Court.

13      **THE COURT:**  July 7th?  My question includes Mr. Cruz.

14  July 7th?

15      **(The Court confers with the Clerk)**

16      **THE COURT:**  July 7th appears to be the -- a good day;

17  we're open.

18      I guess the issue is: Can we reach a stipulate in

19  terms of the T-max time to commence trial on the case rather

20  than having to compute all of the time --

21      **MR. O'NEILL:**  Yes.

22      **THE COURT:**  -- from the filing of this motion?  If

23  counsel would amend the stipulation to include that the Court

24  has July 7th or two weeks thereafter to commence trial so that

25  we avoid any speedy trial claims, I think that would suffice.

1      **MR. MIDDLETON:**  Yes, your Honor, if I could address

2  the Court?  We're actually in the process of drafting up a

3  stipulation, and one of the reasons we haven't gotten it filed

4  thus far is that we wanted to include that language.  And I

5  think we've worked the language out and the stipulation should

6  actually be filed today.

7      The stipulation is for a trial on the 7th of July,

8  and it also includes language to indicate that the T-max would

9  be the 21st of July.

10     **THE COURT:**  Okay.  And that's good with

11  Mr. O'Donnell?  Yes?

12     **DEFENDANT O'NEILL:**  Yes, it is, your Honor.

13     **THE COURT:**  Mr. O'Donnell's agreeable?

14     **DEFENDANT O'DONNELL:**  Yes, your Honor.

15     **THE COURT:**  Okay.  Is there anything further?

16     **MR. O'NEILL:**  Your Honor, there is.  There are

17  motions in limine which have been set for next Tuesday, the

18  9th.  Is Tuesday the 9th?  And I'm inquiring whether they are

19  still on.

20     **THE COURT:**  What motions are you referring to?

21     **MR. O'NEILL:**  They were motions to introduce or to

22  keep out certain testimony of certain categories of witnesses.

23     **THE COURT:**  How many motions?

24     **MR. O'NEILL:**  There are two.

25     **MR. MITCHELL:**  There are three, but they're

1  corresponding.  They're sort of 'my motion, his motion, our

2  answer, their answer'.  It's really two issues or two

3  categories of witnesses.

4       THE COURT:  Okay.  And the length of trial estimate

5  is what?

6       MR. MITCHELL:  Five days, your Honor; in that range.

7       THE COURT:  That long?

8       MR. O'NEILL:  That's a fair estimate.

9       THE COURT:  Are there any other issues for the Court

10  to -- housekeeping matters for the Court to address?

11       MR. MITCHELL:  Your Honor, today would be the date

12  that the parties, for instance, I think there's -- or at least

13  for the government's side, exhibit lists to be filed, and I

14  think the reply briefs on the motions in limine by either

15  party.  Given that the trial's going to be pushed back about

16  four weeks, if we could have another additional week for those

17  items, that would be requested.

18       THE COURT:  Ideal?

19       MR. MITCHELL:  Ideal.

20       THE COURT:  Okay.  So you're requesting it?  Just

21  give me a date.

22       MR. MITCHELL:  One week from today for those other

23  items.

24       THE COURT:  Let me have the date from the Clerk.

25       THE CLERK:  Yes, your Honor.  That would be Tuesday,

39

1    June the 9th, your Honor.

2         THE COURT:  Pretrial documents then per stipulation

3    agreement will be due on or before June 9th.

4         MR. MITCHELL:  Yes, your Honor.

5         MR. TERWILLIGER:  Very well, your Honor.

6         MR. MITCHELL:  And then, your Honor, the hearing date

7    is -- If the replies are being filed on June 9th, it may be a

8    little tight for the Court to have the hearing on those

9    matters.  It's currently set for June 9th.  If there is a

10   hearing date that we could go to, possibly a week later, that

11   might be better for all parties.

12        THE COURT:  Especially since I usually start with

13   replies and then work back.

14     (Laughter)

15        THE COURT:  No, nothing will be --

16        Okay.  So we should put that when?

17        MR. O'NEILL:  The 16th, would it be?

18        MR. MITCHELL:  The 16th would be fine.

19        THE COURT:  That would be agreeable?

20        MR. MITCHELL:  Thank you, your Honor.

21        THE COURT:  Is that open?

22        THE CLERK:  Yes, your Honor.

23        THE COURT:  Okay.

24        Okay, the Court will take it under submission.  It's

25   obviously important to both sides.  I appreciate the oral

1    presentations, the oral advocacy today.  It's been a delight

2    having the lawyers for both sides here.

3            **MR. O'NEILL:**  Thank you very much, your Honor.

4            **MR. MITCHELL:**  Thank you very much, your Honor.

5            **MR. TERWILLIGER:**  Thank you, your Honor.

6            **MR. O'NEILL:**  We had a good time.

7            **MR. MITCHELL:**  Appreciate it.

8            **THE CLERK:**  The Court's in recess.

9        **(This proceeding was adjourned at 11:29 a.m.)**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    June 4, 2009  _


TONI HUDSON, TRANSCRIBER