UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. CR 08-00872 SJO |
| Plaintiff, | ) | |
| | ) | **ORDER GRANTING IN PART AND** |
| v. | ) | **DENYING IN PART DEFENDANT'S** |
| | ) | **MOTION TO DISMISS INDICTMENT** |
| PIERCE O'DONNELL, | ) | [Docket No. 20] |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Defendant Pierce O'Donnell's Motion to Dismiss Indictment, filed March 16, 2009. Plaintiff United States of America (the "Government") filed an Opposition, to which O'Donnell replied. The Court held a hearing on this matter on June 2, 2009. Because of the following reasons, O'Donnell's Motion is GRANTED IN PART and DENIED IN PART.

I.   BACKGROUND

The Government alleges that O'Donnell and an unindicted co-conspirator acting at O'Donnell's instruction solicited individuals, including employees of O'Donnell's law firm, to contribute a total of over $10,000 in one year to "EFP," an authorized political committee supporting the election of a candidate for President of the United States, and reimbursed their contributions. Based on these allegations, the Government indicted O'Donnell for: (1) conspiring

to make illegal campaign contributions in violation of 18 U.S.C. § 371 and the Federal Election Campaign Act ("FECA"), 2 U.S.C. § 441f ("Count One"); (2) making and causing to be made illegal campaign contributions in violation of 2 U.S.C. § 441f ("Count Two"); and (3) knowingly and willfully causing ESP's treasurer to make materially false statements in violation of 18 U.S.C. § 1001 ("Count Three").

O'Donnell now moves to dismiss on the grounds that the conduct alleged in Counts One and Two is not prohibited, and Count Three fails to allege the essential elements of the crime charged.

## II.  DISCUSSION

### A.  Counts One and Two Do Not Allege Prohibited Conduct.

"In all statutory construction cases, [courts] begin with the language of the statute. The first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.' The inquiry ceases 'if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (internal citations omitted). In determining the meaning of a statute, "it is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id.* at 452 (citing *Russello v. United States*, 464 U.S. 16, 23 (1983)) (explaining that "where Congress wanted to provide for successor liability in the Coal Act, it did so explicitly, as demonstrated by other sections in the Act that give the option of attaching liability to 'successors' and 'successors in interest. . . . If Congress meant to make a preenactment successor in interest like Jericol liable, it could have done so clearly and explicitly'"). In such situations, the Supreme Court has explained that "we refrain from concluding that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship." *Id.* Further, "it is a 'cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

Lastly, "deference to [an agency's] statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." *Gen. Dynamics Land Sys. v. Cline*, 540 U.S. 581, 600 (2004).

### 1. 2 U.S.C. § 441f Is Unambiguous and Does Not Prohibit O'Donnell's Conduct.

Section 441f provides: "No person shall make a contribution in the name of another person or knowingly permit his name to be used to effect such a contribution, and no person shall knowingly accept a contribution made by one person in the name of another person." 2 U.S.C. § 441f. The term "contribution " includes "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office." 2 U.S.C. § 431(8)(A)(i). In contrast, § 441a, which sets forth the maximum limits on contributions to a candidate or political committee, provides that for purposes of that section only, "all contributions made by a person, *either directly or indirectly*, on behalf of a particular candidate, including contributions which are in any way earmarked or *otherwise directed through an intermediary or conduit* to such candidate, shall be treated as contributions from such person to such candidate." 2 U.S.C. § 441a(a)(8) (emphasis added). Similarly, Congress explicitly provided that for purposes of contributions or expenditures by national banks, corporations, or labor organizations, "the term 'contribution or expenditure' includes a contribution or expenditure, as those terms are defined in 2 U.S.C. § 431, *and also includes any direct or indirect payment* . . . or gift of money . . . or anything of value . . . ." 2 U.S.C. § 441b (emphasis added). Likewise, Congress specifically made it unlawful for "a foreign national, *directly or indirectly*, to make a contribution or donation of money or other thing of value." 2 U.S.C. § 441e(a)(1) (emphasis added).

The Government has charged O'Donnell with violating § 441f by soliciting and reimbursing his employees' contributions. (Indictment 4.) O'Donnell argues that § 441f prohibits only the act of making a contribution and providing a false name, not asking others to make contributions in their names and reimbursing them for it. (Def.'s Mem. P. & A. 4.) He points out that while Congress explicitly used the words "indirectly," "conduit" and "intermediary" in other parts of FECA, § 441f includes no such language. *See* 2 U.S.C. §§ 441a; b; e, f. Indeed, it appears that

if Congress intended § 441f to apply to indirect contributions, or contributions made through a conduit or intermediary, it would have included explicit language, as it did in other sections of the same statute.  *See Barnhart v. Sigmon Coal Co.*, 534 U.S. at 452.  Moreover, if § 441f covered "conduit" and "indirect" contributions, there would be no need for Congress to have explicitly included those terms in other sections of FECA.  As the Court should, whenever possible, interpret a statute so as not to render any of its terms superfluous, the better reading of § 441f is that it does not cover such contributions.  *See TRW Inc.*, 534 U.S. at 31.  Lastly, if § 441f covered indirect contributions made through a conduit, that would mean such contributions were never allowed.  However, § 441a allows for indirect and conduit contributions, as long as they do not exceed designated limits.  *See* § 441a.  Thus, reading § 441f to prohibit such contributions is irreconcilable with § 441a's express authorization of them.

Indeed, the Government acknowledged the tension between § 441a and § 441f at oral argument, stating: "I do see the ambiguity that the Court's pointing to is that in one sense [FECA is] saying you have to report [an indirect contribution].  If you have to report it, then why is it something that 441(f) prohibits?"  (June 2, 2009 Tr. 22:1-4.)  The Government also stated that "I think if you disclosed [an indirect contribution] you might not run into trouble, because, again, there's no penalty–I mean there's no criminal sanction–for 441(f) until you reach over two thousand dollars. . . ."  After the hearing, the Government filed a Supplement to Opposition in which it states that "[i]f a person makes a conduit contribution he has violated § 441f, regardless of the amount of the conduit contribution."  (Pl.'s Supp. Opp'n 2.)  In the Supplement, the Government analogizes the relationship between § 441a and § 441f to that between the tax code and Title 21.  It notes that the tax code requires a drug dealer to report income earned from selling cocaine, but that such sales are illegal under Title 21, and reasons that, similarly, § 441a requires one to report conduit contributions, while § 441f makes them illegal.  *Id.*  However, unlike the cocaine reporting requirements in the tax code and the separate criminalizing statute, the provisions regarding conduit contributions are found in different sections of the same statute.  Because a statute must be construed as a whole, the Court must read § 441a and § 441f in a way that makes them consistent with one another, and with the rest of FECA.  As explained above, the

1  Government's proposed interpretation does not do this. Accordingly, analyzing the plain language
2  of § 441f in the context of FECA as a whole, § 441f is unambiguous and does not prohibit soliciting
3  and reimbursing contributions.

      2.    <u>Even If § 441f's Plain Language Were Ambiguous, FECA's Legislative History and the Rule of Lenity Establish That § 441f Does Not Prohibit O'Donnell's Conduct</u>.

          a.    <u>FECA's Legislative History</u>

8  Even if the language of § 441f were ambiguous, the legislative history of FECA suggests
9  that Congress did not intend § 441f to cover indirect contributions. After § 441f was introduced,
10 Senator Scott stated that a "loophole" existed in the campaign contribution laws because a "man
11 of influence" could evade contribution limits by giving his friends money and having them
12 contribute an equal amount to his campaign. 117 Cong. Rec. 29,295 (1971). If § 441f prohibited
13 using one's friends as conduits for contributions, there would be no "loophole" to fill. In addition,
14 § 441b's predecessor, 18 U.S.C. § 610, prohibited contributions by national banks, corporations,
15 and labor organizations. During debate on a proposed bill and amendment to add language
16 defining "contribution" to "include any direct or indirect payment," Senator Hansen was asked
17 whether an employee could make a contribution and be reimbursed by his corporate employer.
18 Hansen replied that doing so "would constitute a violation of law . . . *as an indirect payment*." 117
19 Cong. Rec. 43,381 (1971) (emphasis added). Senator Hayes agreed. *Id.* This discussion
20 demonstrates that Congress used the term "indirect" to cover reimbursements.

          b.    <u>The Rule of Lenity</u>

22 The rule of lenity "requires ambiguous criminal laws to be interpreted in favor of the
23 defendants subjected to them." *United States v. Santos*, 128 S. Ct. 2020, 2025 (2008) (internal
24 citations omitted). "[T]he rule applies 'for those situations in which a reasonable doubt persists
25 about a statute's intended scope even *after* resort to the language and structure, legislative
26 history, and motivating policies of the statute.'" *United States v. Devorkin*, 159 F.3d 465, 469 (9th
27 Cir. 1998) (internal citations omitted). Here, the statute is unambiguous in light of its plain
28

language, structure, and legislative history. However, assuming it remained ambiguous after such analyses, the rule of lenity would require the Court to interpret § 441f in O'Donnell's favor.

### 3. The Government's Remaining Arguments Are Unpersuasive.

The Government contends that "funneling money to another person (through either an advance or reimbursement) in order for that person to make a contribution is *basically* a contribution in the name of another person," and that O'Donnell "*essentially* made a contribution in the name of another person." (Pl.'s Opp'n 5, 11 (emphasis added).) It notes that several courts, including the Ninth Circuit, have described § 441f as the section that "prohibits the use of 'conduits' to circumvent [FECA's] restrictions." *Goland v. United States*, 903 F.2d 1247, 1251 (9th Cir. 1990); *see also Mariani v. United States*, 212 F.3d 761, 766 (3d Cir. 2000) (describing § 441f as "the conduit contribution ban or 'anti-conduit' provision"). However, while these courts have described § 441f as pertaining to conduits in passing, they did so while addressing other aspects of FECA, and have not actually considered whether § 441f covers indirect contributions or reimbursements. In *Goland*, for example, Goland solicited and reimbursed contributions, and was charged with violating 2 U.S.C. §§ 441a and 441f. *See Goland*, 903 F.2d at 1252. The first criminal suit against him resulted in a mistrial, and he was re-indicted under § 441a but not 441f. *See United States v. Goland*, 897 F.2d 405, 407-408 (9th Cir. 1990); *United States v. Goland*, 959 F.2d 1449, 1451-52 (9th Cir. 1992). Judge Fletcher's comment describing § 441f as prohibiting conduits was in the context of Goland's civil suit challenging the constitutionality of FECA under the First Amendment, and thus Judge Fletcher was not presented the opportunity to consider whether § 441f prohibited reimbursements, but rather focused solely on the constitutionality of the law. *Id.* Because Judge Fletcher's statement, like that in *Mariani*, was a passing comment made in the course of considering a separate issue, rather than a holding made after analyzing § 441f in the context of reimbursements, these generalized statements are not persuasive on the matter at issue here.

The Government also argues that because the definition of contribution applicable to § 441f includes "anything of value made by any person for the purpose of influencing any election for Federal office," O'Donnell's reimbursements to his employees qualify as "things of value," and thus

as contributions. However, if the reimbursement itself is the "contribution," O'Donnell did not "make a contribution in the name of another person," as he reimbursed the employees in his own name.

The Government notes that the Federal Election Commission ("FEC"), which provides civil enforcement of FECA, has issued a regulation concerning § 441f which states that "examples of contributions in the name of another include giving money or anything of value, all or part of which was provided to the contributor by another person (the true contributor) without disclosing the source of the money or the thing of value to the recipient candidate or committee at the time the contribution is made." 11 C.F.R. § 110.4(b)(2)(i). In addition, an FEC advisory opinion states that "the Act and Commission regulations prohibit the making and knowing acceptance of contributions in the name of another, and also prohibit the use of one's name to effect such a contribution. 2. U.S.C. § 441f; 11 C.F.R. 110.4(b). This includes the reimbursement or other payment of funds by one person to another for the purpose of making a contribution." FEC Advisory Opinion No. 1996-33, 1996 WL 549698. While these statements may reflect the spirit of FECA, they do not accord with the plain language of § 441f read in conjunction with the sections of FECA expressly prohibiting "conduit" and "indirect" contributions, as well as FECA's legislative history. Moreover, because the plain language, structure, and legislative history of FECA demonstrate that "indirect" and "conduit" contributions are covered by other FECA sections but not by § 441f, deference to the FEC's interpretation is not warranted. *See Gen. Dynamics Land Sys.*, 540 U.S. at 600; *see also Ctr. for Biological Diversity v. Brennan*, 571 F. Supp. 2d 1105 (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842 (1984)) (explaining that "under *Chevron*, a court defers to an agency's reasonable interpretation of a statute, if a statute is ambiguous, and if, after examining the statute using the 'traditional tools of statutory construction,' that ambiguity remains").

For the foregoing reasons, the Court finds that O'Donnell's conduct of reimbursing his employees for contributions they made does not fall within the ambit of § 441f, and thus GRANTS O'Donnell's Motion to Dismiss with regards to Counts One and Two.

B.   Count Three Sufficiently States the Essential Elements of the Crime Charged.

Count Three alleges that O'Donnell "knowingly and willfully caused the treasurer of EFP . . . to make a materially false statement" that his employees had made contributions to EFP "when, in fact, as O'Donnell well knew, O'Donnell had made those contributions by providing his money to those individuals . . . to make those contributions." (Indictment 8.) O'Donnell alleges that this Count must be dismissed because: (1) it fails to allege the essential elements of a violation of 18 U.S.C. § 1001; and (2) EFP's statement to the FEC was "indisputably true." (Def.'s Mem. P. & A. 8.)

1.   The Indictment Alleges the Essential Elements of a Violation of 18 U.S.C. § 1001.

O'Donnell argues that the Indictment's statement that he "knowingly and willfully" caused the false statements fails to allege the mens rea required to convict a person for causing a false statement in the context of FEC reporting. *Id.* at 9. He cites a Third Circuit case which required a heightened mens rea to be liable under § 1001 in conjunction with 18 .U.S.C. § 2b, for causing another to make a false statement, rather than directly making the statement himself. *See United States v. Curran*, 20 F.3d 560, 570-571 (3d Cir. 1994). In *Curran*, the Third Circuit held that a defendant must: (1) know that the treasurer had a legal duty to report the actual source of contributions; (2) have acted with the specific intent to cause the treasurer to submit a report that did not accurately provide the relevant information; and (3) have known that his actions were unlawful. *Id.* The *Curran* court reached this conclusion after noting that there was no "controlling case law expounding the proper construction of willfulness required for a charge under § 2b linked with § 1001 in a [FECA] case." *Id.* at 568. It analogized to *Ratzlaf v. United States*, 114 S. Ct. 655 (1994), in which the defendant was accused of structuring cash deposits to evade the federal regulation requiring banks to report amounts deposited in excess of $10,000. The Supreme Court held that the jury instructions were incorrect because they failed to state that the prosecution must show the defendant knew the structuring was unlawful. *Curran*, 20 F.3d at 568 (citing *Ratzlaf*, 114 S. Ct. at 663). Relying on *Ratzlaf*, the *Curran* court found jury instructions incorrect that "failed

to state that the government had the burden of proving that defendant knew of the campaign treasurers' obligation to submit contribution reports to the [FEC]." *Id.* at 570.

The D.C. Circuit has expressly rejected the Third Circuit's heightened mens rea requirement and instead held that the mens rea for § 1001 requires only that "the defendant knew the statements to be made were false" and "the defendant intentionally caused such statements to be made by another." *United States v. Hsia*, 176 F.3d 517, 522 (D.C. Cir. 1999). In *Hsia*, the court explained that *Curran*'s reliance on *Ratzlaf* was flawed. It noted that *Ratzlaf* "did not universalize a broad reading of 'wilfully' and thus overturn the general rule that ignorance of the law is no excuse. *Ratzlaf* found a knowledge-of-criminality requirement in a statute that independently required the act at issue to be 'for the purpose of evading' various reporting requirements; reading 'wilfully violating' there as only requiring intention would have made it surplusage. In [ cases brought under § 1001 and § 2b], no such problem exists." *Id.* (citing *Ratzlaf*, 114 S. Ct. at 658).

While the Ninth Circuit has not considered the issue of § 1001 violations in the FEC reporting context, it has held in other contexts that "the mens rea needed to violate § 1001 [requires] only that the defendant act 'deliberately and with knowledge.'" *United States v. Kim*, 95 Fed. Appx. 857, 861 (9th Cir. 2004) (citing *United States v. Heuer*, 4 F.3d 723, 732 (9th Cir. 1993) ("to willfully make a false statement under § 1001, the defendant must have the specific intent to make a false statement")); *see also United States v. Dominguez-Mestas*, 687 F. Supp. 1429, 1433 (S.D. Cal. 1988) (explaining that for conviction under § 1001, the prosecution must prove the intent element by showing "that the defendant knew the statement was untrue"). In regards to other statutes requiring willfulness, the Ninth Circuit has explained: "the Supreme Court has recognized that 'the word willfully' is sometimes said to be 'a word of many meanings' whose construction is often dependent on the context in which it appears." *United States v. Henderson*, 243 F.3d 1168, 1171-72 (9th Cir. 2001) (citing *Bryan v. United States*, 524 U.S. 184, 191 (1998). "Often, in the criminal context, 'in order to establish a 'willful' violation, the Government must prove that the defendant acted with knowledge that his conduct was unlawful. In particular, proof of knowledge of unlawfulness is required when the criminal conduct is contained in a regulation instead of in a

statute, and when the conduct punished is not obviously unlawful, creating a 'danger of ensnaring individuals engaged in apparently innocent conduct'." *Id.* at 1172 (internal citations omitted.)

Here, the conduct proscribed is contained in a statute, not a regulation. In addition, requiring a defendant to know the statements are false and intentionally cause someone to make them is a sufficient safeguard against punishing purely innocent conduct. Moreover, the Court agrees with the D.C. Circuit's analysis of § 1001 and rejection of the Third Circuit's heightened mens rea requirement. *See Hsia*, 176 F.3d at 522. Thus, the Government satisfies its burden of proving a § 1001 violation by showing that O'Donnell knew the statements to be made were false and intentionally caused such statements to be made by another. *See id.* Accordingly, the Indictment here, which alleges that O'Donnell acted "knowingly and willfully," sufficiently states the essential element of mens rea for a § 1001 and § 2b violation.

### 2. The Statements at Issue Are Not "Indisputably True".

O'Donnell argues that the Court must dismiss Count Three because he has a complete defense to § 1001 liability in that the EFP treasurer's statement to the FEC was "indisputably true." (Def.'s Mem. P. & A. 11.) FECA requires treasurers to report to the FEC "the identification of each person . . . who makes a contribution to the reporting committee . . . whose contribution(s) have an aggregate amount or value in excess of $200 within the calendar year." 2 U.S.C. § 434(b)(3)(A). O'Donnell argues that FECA requires reporting of the names of those who actually tender funds to a campaign committee, not the "original source" of those funds, and thus the EFP treasurer's statements were literally true. (Def.'s Mem. P. & A. 12-13.)

Once again, the Ninth Circuit has not considered this issue. However, other courts that have considered the issue have held that "§ 434(b) of FECA requires political committees to report the 'true source' of hard money contributions; thus, statements identifying conduits as the source of funds were not 'literally true.'" *United States v. Kanchanalak*, 192 F.3d 1037, 1042 (D.C. Cir. 1999) (citing *Hsia*, 176 F.3d at 523-24) (explaining that "as in *Hsia*, defendants are alleged to have acted as conduits or utilized others in making contributions to political committees in federal elections. By thus causing political committees to report conduits instead of the true sources of donations, defendants have caused false statements to be made to a government agency").

1  O'Donnell cites no authority holding otherwise. Accordingly, the EFP treasurer's statements were
2  not "indisputably true," and the Court will not dismiss the Indictment on this ground.
3  III.     RULING
4         For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's
5  Motion to Dismiss the Indictment. Counts One and Two are hereby DISMISSED.
6         IT IS SO ORDERED.
7  Dated: June 8, 2009

*S. James Otero*

S. JAMES OTERO
UNITED STATES DISTRICT JUDGE